76956, 76958, 76959. JOHNSON REALTY, INC. et al. v. HAND;
and vice versa (three cases).
(377 SE2d 176)

CARLEY, Judge.

At the times relevant to these appeals, Rudolph Johnson was the sole shareholder of Johnson Realty, Inc., and his son, Michael Johnson, was employed by the company as a real estate agent. Michael Johnson inquired of Byron Hand whether he wished to sell certain property. Hand responded that he would be willing to sell his property for a specified net price. Shortly thereafter, Michael Johnson returned with a sales contract which he presented for Hand's acceptance. The sale price was sufficient to net to Hand the amount that he had specified. Michael Johnson did not disclose, however, that the purchaser who was named in the sales contract was his own father-in-law. Hand signed the contract.

When Hand arrived at the closing, he was informed that the purchaser named in the sales contract could not be present. Instead, Michael Johnson's wife, Mrs. Rae Johnson, was present and prepared to "sit in" for the absent purchaser. According to Hand, there was again no disclosure that the absent purported purchaser was Michael Johnson's father-in-law. Hand agreed to the transfer of title to the property to Rae Johnson and she, in turn, subsequently did convey the property to her father. Shortly after title to the property had been transferred from his wife to his father-in-law, Michael Johnson was successful in his efforts to sell the property to a third party for a price that was significantly greater than that which Hand had been paid. A

large part, if not all, of the profit from this sale went to Michael Johnson, rather than to his father-in-law.

When Hand learned that the property had been resold for a price greater than he had been paid, he brought this action against Johnson Realty, Inc., Rudolph Johnson, Michael Johnson and Rae Johnson. It was alleged that Michael Johnson had breached the duty owed to Hand as Hand's agent for the sale of the property. See *Kellett v. Boynton*, 87 Ga. App. 692 (75 SE2d 292) (1953). It was also alleged that an entirely separate transaction whereby Rae Johnson had been conveyed title to real property was void and should be set aside. See OCGA § 18-2-22. The defendants filed answers which denied the material allegations of Hand's complaint. The case came on for trial before a jury. The jury returned a verdict in favor of Hand as against Johnson Realty, Inc. and Michael Johnson, but not as against Rudolph Johnson and Rae Johnson. Judgments were entered on the jury's verdicts and Johnson Realty, Inc., Michael Johnson and Hand each filed separate appeals therefrom. The three appeals are hereby consolidated for disposition in this single opinion.

## Case No. 76958

In this case, Michael Johnson appeals from the judgment entered on the jury's verdict against him and in favor of Hand.

1. Michael Johnson enumerates the general grounds.

"The law is uniform and well settled that an agent, who has been engaged to sell real estate for the owner, may not, either directly or indirectly, purchase it himself, without the express consent of the principal after a full knowledge of all the facts. This is so declared by our Code, [OCGA § 10-6-24]." *Dolvin Realty Co. v. Holley*, 203 Ga. 618, 621 (2) (48 SE2d 109) (1948). "The policy of the law forbids an agent employed to sell to place himself in an attitude of antagonism to the interest of his principal, by associating himself with another in the purchase of the land; and a sale by an agent without the express consent of his principal to himself in association with another, with knowledge of his agency, will be set aside at the instance of the principal. It will be no defense for the agent and his associate to show that the agent acted in good faith, and that the transaction was in fact for the best interest of the principal." *Reeves v. Callaway*, 140 Ga. 101, 105 (2) (78 SE 717) (1913). "The relationship of principal and agent is confidential and fiduciary, and demands of the agent loyalty and good faith to the principal ([cits.]); and [OCGA § 10-6-25] provides that 'The agent shall not make a personal profit from his principal's property; for all such he is bound to account.' " *Kellett v. Boynton*, supra at 696. "The rule forbidding an agent . . . from purchasing his principal's property, without the express consent and

knowledge of the principal, is not made inapplicable because the property was listed for sale with the agency at a fixed or minimum price. When [Hand], the owner, named the minimum price that [he] would accept for [his] property, it was manifestly intended as a guide to [his] agent in negotiating the sale, and implied a just expectation on [his] part and an engagement on [his] agent's part that he would make an honest endeavor to obtain a higher price." *Dolvin Realty Co. v. Holley,* supra at 622 (2).

It follows that, although the evidence would not demand a finding that Michael Johnson had breached the duty he owed to Hand as Hand's agent for the sale of the property, it would authorize such a finding.

2. The trial court admitted into evidence testimony and documents relating to the original sales contract presented to Hand wherein Michael Johnson's father-in-law was named as the purchaser. The admission of this evidence is enumerated as error, the contention being that it was irrelevant because the only sale of the property which actually closed was that to Michael Johnson's wife.

The original sales contract was clearly relevant to show the initiation by Michael Johnson of an undisclosed effort on his part to earn a secret personal profit on the eventual resale of Hand's property by first attempting to purchase it indirectly through his father-in-law. " ' "An agent owes to his principal a loyal adherence to his interests, and it would be a fraud upon the principal, and would contravene the public policy, to permit an agent, *without the full knowledge* and consent of his principal, to enter into a relation involving such a duty, when his allegiance had been already pledged to one having adverse interests, or when his own personal interests would be antagonistic to those of his principal." The rule has also been thus stated: "An agent will not be allowed to place himself in a position in which his duty and interest conflict, or be permitted to make a *secret profit* out of his agency." ' [Cits.]" (Emphasis in original.) *Spratlin, Harrington & Thomas, Inc. v. Hawn,* 116 Ga. App. 175, 181-182 (2) (156 SE2d 402) (1967). The evidence was properly admitted. See generally *Vinson v. E. W. Buschman Co.,* 172 Ga. App. 306, 310 (2) (323 SE2d 204) (1984).

3. Over objection, the trial court gave several charges with reference to the rules and regulations promulgated by the Georgia Real Estate Commission. The giving of these charges is enumerated as error.

"Where an agency or commission is granted the authority and power to adopt . . . rules and regulations *within the scope of the legislative enactment,* such rules and regulations have the same force and effect as that of a statute. [Cit.]" (Emphasis supplied.) *Panfel v. Boyd,* 187 Ga. App. 639, 643 (2b) (371 SE2d 222) (1988). As an exam-

ple, the legislature has delegated to the Public Service Commission plenary quasi-legislative power to regulate *the business* of common carriers in this state and has also granted to that Commission the authority to adopt such rules and regulations as it may deem necessary to the exercise of that delegated power. See OCGA §§ 46-7-2; 46-7-27; *Maner v. Dykes*, 55 Ga. App. 436, 438 (3) (190 SE 189) (1937). See also *Cambron v. Canal Ins. Co.*, 246 Ga. 147, 151 (8) (269 SE2d 426) (1980), holding that the Supreme Court has inherent power to regulate *the practice* of law in this state and the authority to adopt such rules and regulations as it may deem necessary to the exercise of that inherent power.

Accordingly, the rules and regulations promulgated by the Supreme Court, through its inherent power, and by the Public Service Commission, through its delegated authority from the legislature, supplant the necessity for enactment of statutory provisions with reference to the manner in which the applicable profession is actually to be conducted and, having the same force and effect as the supplanted statutes, those rules and regulations become the controlling legal standards of professional conduct. However, unlike the Supreme Court, the Georgia Real Estate Commission has no inherent power over the real estate profession in this state and, unlike the Public Service Commission, the legislature has not delegated to the Georgia Real Estate Commission plenary quasi-legislative power over the general conduct of the real estate business. The General Assembly has determined that it will retain its legislative power to control the manner in which the real estate business is actually to be conducted, and has granted the Georgia Real Estate Commission only the limited quasi-legislative power to determine who is qualified to practice the real estate business in this state. Pursuant to OCGA § 43-40-1 et seq., the Georgia Real Estate Commission is authorized only to promulgate rules and regulations which are "regulatory in nature. [Those rules and regulations] are limited to action by the Georgia Real Estate Commission in the exercise of its licensing powers." *Campagna v. Sara Hudson Realty Co.*, 137 Ga. App. 451, 452 (224 SE2d 102) (1976). Accordingly, the rules and regulations recognize "certain minimum standards for persons engaged in the real estate business." *Kimball Bridge Rd. v. Everest Realty Corp.*, 141 Ga. App. 835, 837 (2) (234 SE2d 696) (1977). These "minimum standards" are recognized, however, solely for the regulatory purpose of licensing and, in a civil action based upon a real estate agent's alleged misconduct, it is only the relevant unsupplanted statutory provisions which are applicable. "Some of the conduct condemned [by the rules and regulation] may also serve as the basis for judicial action for recovery of monetary damages *under [relevant] statutes*." (Emphasis supplied.) *Campagna v. Sara Hudson Realty Co.*, supra at 452. It follows that the rules and

regulations of the Georgia Real Estate Commission have the same force and effect as that of statutes in the area of licensing and, to keep his license, a realtor must therefore comply with them. Those rules and regulations do not, however, have the same force and effect as that of statutes in the area of civil liability for breach of professional conduct and, to avoid judgment, a realtor must comply with the relevant statutory principles of agency.

The present case involved no regulatory issue concerning licensing. Compare *Diversified Holding Corp. v. Clayton McLendon, Inc.*, 120 Ga. App. 455 (1) (170 SE2d 863) (1969). The only issue was whether Michael Johnson had breached his legal duty to Hand in connection with the sale of Hand's property. This issue does not arise in the context of a negligence action, wherein the defendant's conduct is measured against the general standard of the ordinary reasonable man and evidence of custom would be admissible to illustrate that general standard. Compare *Coffeen v. Doster*, 161 Ga. App. 529 (1) (288 SE2d 327) (1982). Michael Johnson's conduct is measured against the relevant *statutory* provisions concerning the law of agency, and not by the irrelevant licensing regulatory provisions promulgated by the Georgia Real Estate Commission. Regardless of whether Michael Johnson's conduct is in compliance with or in breach of the regulatory provisions, that conduct affords Hand no basis for recovery if it is not proscribed by the relevant statutory provisions. As discussed, the regulations simply do not supplant the statutory principles of agency as the relevant standards against which a realtor's actions must be judged in a civil action. See generally *Panfel v. Boyd*, supra at 645 (2b), holding that "[t]he Regulations of the Real Estate Commission are neither a panacea nor a shield which will insulate a real estate broker from compliance with the clear terms of a realty contract to which it is a party." While the regulations are the relevant standards for determining whether a realtor should lose his license to practice his profession, it is the statutes which are paramount and establish the relevant standards for determining whether he is civilly liable for violating his legal duties. It follows that the trial court erred in giving any charge which was predicated upon the irrelevant rules and regulations, rather than upon the applicable statutory principles of agency.

4. Over proper objection, the trial court admitted into evidence a collection of checks written on the account of Jonesboro Plaza, Inc. Hand apparently owned this corporation and the corporation in turn owned a small shopping center. Johnson Realty, Inc., managed the shopping center and, in its capacity as manager, was authorized to write checks on the Jonesboro Plaza, Inc., checking account.

It appears that the management by Johnson Realty, Inc., of the shopping center had no relevancy to any issue involved in the trial of

the present case. The only relevant issue was the conduct of Michael Johnson in his capacity as Hand's agent for the sale of an entirely separate tract of real property. It is only that agency relationship which was allegedly breached, and any conduct in connection with the management of the shopping center would have no bearing on this case. It follows that the trial court erred in allowing this irrelevant evidence of a separate transaction to be admitted. See generally *Head v. John Deere Plow Co.*, 71 Ga. App. 276, 278 (1) (30 SE2d 662) (1944).

5. The trial court did not err in charging the provisions of OCGA § 10-6-24 to the jury. As discussed in Division 1, the principle of law enunciated in that statute was clearly applicable under the evidence.

6. The trial court did not err in charging the jury on the principles of law regarding confidential relationships. As discussed in Division 1, those legal principles were clearly applicable under the evidence.

7. The trial court gave the following charge: "Misrepresentation of a material fact made wilfully to deceive or recklessly without knowledge and acted on by the opposite party or made *innocently and mistakenly and acted on by the opposite party* constitutes legal fraud." (Emphasis supplied.)

The charge states a correct abstract principle of law. See OCGA § 23-2-52. In its emphasized portion, however, the charge relates to the principle of constructive fraud and that principle has no applicability to the fraud claim for damages asserted by Hand in the present case. "To establish the tort, which was the fraud, actual fraud must be shown and constructive fraud will not suffice. [Cit.]" *Southeastern Greyhound Lines, Inc. v. Fisher*, 72 Ga. App. 717, 722 (4) (34 SE2d 906) (1945). "[A]n innocently made material misrepresentation which the opposite party has a right to act on and does in fact act on to his injury is made to constitute fraud by [OCGA § 23-2-52]; but the fact that the opposite party may occupy [a confidential relationship] does not operate to change that which would otherwise be mere constructive fraud, on account of lack of the element of guilty intent, into actual intentional fraud. It follows that whatever may be the rule in certain foreign jurisdictions with reference to innocent misrepresentations when made by one charged with a special duty to the opposite party to know and to impart the truth ([cit.]), under the statutes and decisions of this State such misrepresentations cannot amount to anything more than constructive fraud, and, as such, are not creative of any independent right of action for damages in tort in favor of the injured party; but they may support an action in *equity* to rescind a contract so induced. [Cits.] Or they may be pleaded *in defense* to a suit on a contract thus procured. [Cits.] Or they may, it might seem, under the doctrine of estoppel, be employed in support of an action

founded *on the contract* itself. [Cits.]" (Emphasis supplied.) *Penn Mut. Life Ins. Co. v. Taggart,* 38 Ga. App. 509, 512 (1) (144 SE 400) (1928).

In the present case, Hand was not seeking the equitable relief of rescission of the contract, and he was neither suing on the contract nor defending against an action on the contract. Hand was asserting the tort of fraud and deceit. Accordingly, the applicable legal issue under the pleadings and the evidence was whether Michael Johnson, as agent for the sale of Hand's property, had committed actual fraud by failing to disclose a material fact in connection with that transaction. " 'Where a person sustains toward [another] a relation of trust and confidence, his silence when he should speak, or his failure to disclose what he ought to disclose, is as much a fraud in law as an actual affirmative false representation. [Cit.]' [Cit.]" *Sutlive v. Hackney,* 164 Ga. App. 740, 742 (297 SE2d 515) (1982). It follows that the "portion of the charge . . ., which dealt with legal or constructive fraud, was not properly adjusted to the issues presented by the pleadings and the evidence, and should not have been given. [Cit.]" *Bucher v. Murray,* 212 Ga. 259, 260 (2) (91 SE2d 610) (1956).

Hand urges that, although an objection to the charge was raised below, this particular ground was not preserved for appellate review or that, if the objection below was sufficient, any error in giving the charge was harmless. However, any consideration of the adequacy of the objection below, the question of harm vel non, or of the applicability of OCGA § 5-5-24 (c) would have no bearing on the ultimate disposition of this case. Since the judgment must be reversed on grounds which have been previously discussed, we need not determine whether the giving of this erroneous charge on constructive fraud constitutes an independent basis for reversal. The charge was erroneous and should not be given in the retrial of this case.

8. There was no error in admitting documentary evidence over an objection which was subsequently withdrawn.

9. There was no error in the giving of a charge to which no timely objection was raised in the trial court.

10. For the reasons given in Divisions 3 and 4, the trial court erred and a new trial must be held.

11. Remaining enumerations of error relate to the admission of evidence and the giving of jury instructions regarding Hand's OCGA § 18-2-22 claim. These enumerations need not be addressed. The jury returned a verdict against Hand as to this claim and he has filed no appeal from the judgment entered on the jury's verdict. Accordingly, the OCGA § 18-2-22 claim will not be an issue at the retrial of the case.

## Case No. 76956

In this case, Johnson Realty, Inc., appeals from the judgment entered on the jury's verdict against it and in favor of Hand.

12. The trial court did not err in admitting into evidence testimony and documents concerning the original sales contract presented to Hand wherein Michael Johnson's father-in-law was named as the purchaser. See Division 2.

13. The trial court erred in admitting testimony concerning the rules and regulations promulgated by the Georgia Real Estate Commission and it also erred in giving any charge which was predicated upon those rules and regulations rather than upon the applicable principles of the law of agency. See Division 3.

14. The trial court's giving of a charge on the principle of ratification is enumerated as error. Johnson Realty, Inc., urges that the charge was erroneously given because there was no evidence which would authorize a finding that it had ratified the acts of Michael Johnson in connection with the sale of Hand's property.

It would appear that there was no evidence which would authorize a finding of Johnson Realty, Inc.'s ratification of the acts of Michael Johnson. Under the evidence, however, Johnson Realty, Inc.'s legal liability would not be dependent upon its ratification of the acts of Michael Johnson. " 'Ratification is the affirmance by a person of a *prior act which did not bind him* but which was done or professedly done on his account, whereby the act, as to some or all persons, is given effect as if originally authorized by him.' [Cits.]" (Emphasis supplied.) *Greene v. Golucke*, 202 Ga. 494 (1) (43 SE2d 497) (1947). The prior acts of Michael Johnson whereby he solicited Hand's property for sale and then actually sold it were acts which Johnson Realty, Inc. had generally authorized him, in his capacity as its real estate agent, to undertake to perform. Accordingly, Johnson Realty, Inc. would be legally bound by those acts without regard to the principle of ratification. "The principal shall be bound for the care, diligence, and fidelity of his agent in his business, and hence he shall be bound for the neglect and fraud of his agent in the transaction of such business." OCGA § 10-6-60. This would be true notwithstanding Michael Johnson's undisputed lack of authority as Johnson Realty, Inc.'s agent to act in violation of the law by indirectly selling Hand's property to himself so as to obtain a secret personal profit on its resale. " 'The rule of "respondeat superior," or that the master shall be civilly liable for the tortious acts of his servant, is of universal application, whether the act be one of omission or commission, whether negligent, fraudulent, or deceitful. If it be done in the course of his employment, the master is liable; and it makes no difference that the master did not authorize, or even know of the servant's act or

neglect, or even if he disapproved or forbade it, he is equally liable, if the act be done in the course of his servant's employment. [Cits.]' " *Evans v. Caldwell,* 52 Ga. App. 475, 478 (2) (184 SE2d 440) (1936).

Accordingly, the trial court did err in charging the jury on the inapplicable principle of ratification. The error was, however, beneficial to Johnson Realty, Inc. The jury was erroneously instructed that Johnson Realty, Inc.'s liability was dependent upon its subsequent ratification of Michael Johnson's unauthorized acts rather than upon its initial capacity as Michael Johnson's master.

15. Johnson Realty, Inc. enumerates as error the trial court's failure to give the following request to charge: "[W]hen an agent ceases to act for his principal and begins to act in his own interest, and to the detriment of his principal, then any knowledge that the agent may have gained is no longer imputed to his principal."

The charge states an abstractly correct principle of law. See OCGA § 10-6-59; *Pursley v. Stahley,* 122 Ga. 362 (1) (50 SE 139) (1905). It was not, however, applicable to any relevant issue in the present case. As discussed in Division 14, Hand's cause of action is in no way dependent upon Johnson Realty, Inc.'s receipt of *notice* of Michael Johnson's acts, but is dependent solely upon Michael Johnson's commission of those acts. Accordingly, Johnson Realty, Inc.'s lack of any imputable knowledge of Michael Johnson's unauthorized acts would provide it with no defense to liability. The trial court correctly refused to give the inapplicable charge.

16. The trial court's refusal to give the following request to charge is enumerated as error: "I charge you members of the jury that [Hand] contends, among other things, that Michael Johnson was acting in the capacity of a 'dual agent.' I charge you that in Georgia, the theory of dual agency does not apply if . . . Hand knew of Michael Johnson's interest in the transaction."

Assuming without deciding that the refused request was a correct statement of the legal concept of dual agency (but see *Spratlin, Harrington & Thomas, Inc. v. Hawn,* 116 Ga. App. 175, 178 (1) supra, that concept was not applicable in the present case. "Dual agency" arises when the agent of one principal is also acting in a particular transaction *as the agent of another principal.* "The 'dual agency' concept is primarily designed to afford protection to the original principal (and under some circumstances to the second principal) where the agent acts for another in the same transaction. [Cit.]" (Emphasis supplied.) *Anderson v. Redwal Music Co.,* 122 Ga. App. 247, 250 (176 SE2d 645) (1970). In the present case, it was neither alleged nor proved that Michael Johnson had acted for more than one principal when he undertook the sale of Hand's property. It was alleged and proved that Michael Johnson was acting in the transaction *for himself,* not as the agent of any undisclosed additional principal. This

concept of "self-dealing agency" is controlled by statute. "Without the express consent of the principal after a full knowledge of all the facts, an agent employed to sell may not himself be the purchaser. . . ." OCGA § 10-6-24. The trial court did give a charge on the concept of "self-dealing agency" in the language of OCGA § 10-6-24. It follows that the trial court did not err in refusing to give the requested charge as to the inapplicable concept of "dual agency."

17. Over objection, the trial court allowed one of Hand's expert witnesses to give an opinion in response to a hypothetical question. This evidentiary ruling is enumerated as error.

As propounded, the hypothetical question had assumed, as one of its factual predicates, the presentation to Hand of the original sales contract wherein Michael Johnson's father-in-law was named as the purchaser. According to Johnson Realty, Inc., that original contract was not relevant to any issue in the case and it objected to the inclusion of the presentation of that contract to Hand as one of the elements of the hypothetical question. As discussed in Division 2, however, evidence concerning the original contract was properly admitted as against any objection to its relevancy. Accordingly, the trial court did not err in allowing the expert witness to answer the hypothetical question which had assumed, as one of its factual predicates, the existence of a relevant fact which was properly in evidence. "The opinion of an expert witness may be given in response to a hypothetical question based on facts placed in evidence either by the testimony of other witnesses or by competent evidence of any nature." *Mutual Benefit Health &c. Assn. v. Hickman*, 100 Ga. App. 348 (2) (111 SE2d 380) (1959).

18. There was no error in admitting documentary evidence over an objection which was subsequently withdrawn.

19. For the reasons discussed in Division 13, the trial court erred and a new trial must be held.

*Case No. 76959*

In this case, Hand appeals from the judgment entered on the jury's verdict returned in favor of Rudolph Johnson.

20. Hand enumerates as error the failure to grant his motion for a directed verdict as to the vicarious liability of Rudolph Johnson, in his personal capacity, for the acts of Michael Johnson.

Rudolph Johnson was the sole shareholder of Johnson Realty, Inc. Michael Johnson was employed by the corporation, and not by his father. Accordingly, Rudolph Johnson could not be held vicariously liable for the acts of his son unless the evidence authorized a finding that the corporate veil of Johnson Realty, Inc. should be pierced. See generally *Jenkins v. Judith Sans Intl.*, 175 Ga. App. 171

(1) (332 SE2d 687) (1985). Hand produced no evidence which would even authorize, much less demand, a finding that Rudolph Johnson's operation of Johnson Realty, Inc. was such that the corporate veil should be deemed pierced.

Hand relies upon the provisions of OCGA § 43-40-1 et seq. as authority for holding that Rudolph Johnson is vicariously liable for the acts of his son without regard to the concept of piercing the corporate veil. As previously discussed, however, those provisions are merely regulatory in nature and do not have the effect of changing the substantive law applicable in a civil action to recover for a real estate agent's alleged misconduct. See *Campagna v. Sara Hudson Realty Co.*, supra. Nothing in OCGA § 40-43-1 et seq. obviated the necessity for Hand to pierce the corporate veil of Johnson Realty, Inc. in order to recover against Rudolph Johnson in her personal capacity. The trial court correctly denied Hand's motion for a directed verdict as to the vicarious liability of Rudolph Johnson for the acts of Michael Johnson.

*Judgments reversed in Case Nos. 76956 and 76958. Judgment affirmed in Case No. 76959. Birdsong, C. J., McMurray, P. J., Banke, P. J., and Benham, J., concur. Deen, P. J., concurs specially. Pope and Beasley, JJ., concur in part and dissent in part. Sognier, J., disqualified.*

DEEN, Presiding Judge, concurring specially.

The dissenting opinion relies to a great extent on the case of *Gordon v. Gordon*, 133 Ga. App. 520, 522 (211 SE2d 374) (1974), the concluding three words of this opinion being "finis sit litium." A special concurrence was written in that case indicating, "I concur in the judgment affirming the lower court," and challenging a portion of the opinion. The part questioned appears not to be a part of that relied on by the dissent.

I concur in Divisions 1, 3, 4, 5, 6, 9, 10, 11, 12, and 14 through 18 and in the judgment of the majority opinion.

BEASLEY, Judge, concurring in part and dissenting in part.

I concur fully except with regard to Divisions 3 and 8, involving Michael Johnson's appeal, case no. 76958, and Division 13, involving Johnson Realty, Inc.'s appeal, case no. 76956.

These divisions relate to court charges in connection with the Georgia Real Estate Manual and testimony about it. Michael Johnson enumerates as error the giving of four charges, three regarding the Georgia Real Estate Manual and one regarding the Georgia Real Estate licensing law. He also enumerates the admission of the manual into evidence. Johnson Realty joins Michael Johnson in enumerating as error the admission of the manual and the giving of the charge in

connection with the Georgia Real Estate licensing law. It further enumerates as error the admission of testimony regarding the licensing law.

As to the admission of the document, objections were withdrawn and consequently the issue dissolved and the manual was admitted into evidence. About this appellants cannot complain, having acceded. The majority addresses the court charges in Division 3, and both the charges and the testimony in Division 13. In order to properly consider the charges and testimony, we must understand what the manual is and the limited purpose for which it was offered and, in obedience to the court's charge, used.

The manual was published by the Georgia Association of Realtors, Inc., under authorization of the Georgia Real Estate Commission, a statutory agency which regulates the profession. OCGA § 43-40-2. The foreword, by the Commission, states that "[t]he Commission is responsible for preparing the contents of the manual." It also states that, in addition to its being a preparatory aid for license examination, "[t]he Commission also intends that current licensees may utilize the contents of this manual as an aid to legal and ethical brokerage activity." A caveat is added to warn that it is not intended as a substitute for legal advice or service. The manual contains Title 43 Chapter 40 of OCGA (the licensing law), the Rules and Regulations (Chapters 520-1 through 520-5), and procedures and explanatory notes regarding various aspects of the real estate practice.

The court charge about which both Michael Johnson and Johnson Realty complain, and which is controlling here, states:

"I charge that a person holding a Georgia real estate license may not be sued for his failure to comply with statutes governing real estate brokers, but those statutes set out the relevant standards and may be referred to in determining whether the broker has violated or fulfilled his fiduciary duties." Thus the court limited the use to which the jury could put the manual. Plaintiff had introduced this documentary evidence and the testimony in connection with it for the limited purpose of serving as a guideline of the minimum standards in the real estate profession.

While of course a great portion of the manual is not relevant to the standard of behavior required of Michael Johnson and Johnson Realty in dealing with Hand, the objections go to the heart of the relevancy of any of it to this issue. Since the court expressly circumscribed the use of it to what was relevant, there was no harm in admitting the whole thing so as to provide the context.

"Where evidence is offered and objected to, if it is competent for any purpose, it is not erroneous to admit it. [Cits.]" *Gordon v. Gordon*, 133 Ga. App. 520, 522 (1) (211 SE2d 374) (1974). As in that case, the evidence here "was admissible for the purpose stated."

" 'Evidence which, in connection with other evidence, tends, however slightly, to prove, explain, or illustrate a fact, even though it is not sufficient, standing alone, to sustain a finding of such fact, is relevant, has probative value and is admissible as against objection as to its relevancy and probative value; doubt as to the latter should be resolved in favor of admission and against exclusion, sufficiency not being a test or condition of admissibility [Cits.]' [Cits.]" *Dept. of Transp. v. Whitehead*, 169 Ga. App. 226, 231 (4) (312 SE2d 344) (1983). Evidence of doubtful relevancy should be admitted, and even if irrelevant evidence is admitted, it does not require a new trial unless the objector's rights are prejudiced. *Wages v. Sibran, Inc.*, 171 Ga. App. 14, 15 (1) (318 SE2d 679) (1984).

Much of the dispute here involved the fiduciary relationship between plaintiff and defendants and the duties of each of the latter to him in their professional capacity. At issue was whether each had lived up to the standards of the profession in dealing with plaintiff, or whether they had violated their professional standards and in addition committed fraud. In aiding the jury to determine what the professional standards were, the minimum standards required by the agency which regulates the profession would be relevant albeit not determinative.

Just as expert testimony on the subject would aid in giving the jury a measuring stick, so would the law, rules and regulations, and practices outlined in the manual for the proper practice of the profession. It would be akin to evidence of custom in the trade. See *City of Macon v. Yaughn*, 83 Ga. App. 610, 614 (2) (64 SE2d 369) (1951). The court in *Coffeen v. Doster*, 161 Ga. App. 529, 530 (1) (288 SE2d 327) (1982) stated the rule: "evidence of custom and practice of persons in a similar trade is admissible to show whether one so engaged can be faulted for negligence by failing to exercise that degree of care customarily followed in the trade, . . ." Relevance to the breaches of duty alleged in this action for fraud and deceit would be no less than in a negligence action.

The minimum standards set by the law and the agency are not recognized in law "solely for the regulatory purpose of licensing," as ruled by the majority. As quoted from *Campagna v. Sara Hudson Realty Co.*, 137 Ga. App. 451, 452 (224 SE2d 102) (1976): "Some of the conduct condemned may also serve as the basis for judicial action for recovery of monetary damages under other statutes." The court in *Kimball Bridge Rd. v. Everest Realty*, 141 Ga. App. 835, 837 (2) (234 SE2d 673) (1977) quoted this and stated: "[h]ence, this Act recognizes certain minimum standards for persons engaged in the real estate business." Fraud is a statutory cause of action. OCGA § 51-6-1.

The agency is empowered to "do such acts and things as may seem advisable to the commission in the advancement of the profes-

sion and the standards of the real estate business." OCGA § 43-40-2 (b).

" 'Questions of relevancy of evidence . . . are for the court, and in the absence of an abuse of judicial discretion, this court will not interfere. [Cit.]' " *Wages*, supra at 15. There was no abuse of discretion in applying OCGA § 24-2-1 as it relates to the testimony concerning the manual, which document was in evidence, particularly in light of the limiting instruction. The charge on the subject was proper and did not supplant but rather supplemented the court's extensive charges on the principles of agency.

Since I find no error in the matter ruled upon in Division 13, I dissent to the reversal of the judgment against Johnson Realty, Inc., Case No. 76956.

I am authorized to state that Judge Pope joins in this opinion.

DECIDED NOVEMBER 30, 1988 —
REHEARING DENIED DECEMBER 20, 1988 — 

*Oliver, Duckworth, Sparger & Winkle, G. Robert Oliver, Warren A. Sellers*, for Johnson Realty & W. R. Johnson.

*Remar & Graettinger, John S. Graettinger, Jr., Marcia E. Fishman, Megan E. Gideon*, for Hand.

*Brown & Foster, Larry A. Foster*, for Michael Johnson.