A90A1790. MOORE v. HARRY NORMAN, INC., REALTORS et al.
(404 SE2d 793)

BANKE, Presiding Judge.

During a period of time when the appellant's residence was listed for sale with Harry Norman, Inc., Realtors, the property was burglarized. There were indications that the burglar had gained access to the

premises by using a key taken from a realtor's lock box which had been installed outside the house. The appellant brought the present action against Harry Norman, Inc., Realtors and First Multiple Listing Service, Inc., (FMLS), seeking actual and punitive damages, plus attorney fees, based on allegations that they had been aware that several other homes in the metropolitan Atlanta area had been burglarized in the same manner but had failed either to disclose this information to her or to take reasonable steps to prevent unauthorized access to her house key. Concluding that the defendants owed no such duty to the appellant, the trial court granted their motion for summary judgment, and this appeal followed.

FMLS is a Georgia corporation which provides services to residential real estate brokerage companies located in the metropolitan Atlanta area, its primary purpose being to facilitate sales of such real estate by circulating listings among its member companies for use by their sales agents. Harry Norman, Inc., is a member company of FMLS; and its president, Harry Norman, is FMLS's vice-president as well as a member of its board of directors.

On June 30, 1987, the appellant entered into an exclusive listing agreement with Harry Norman, Inc., for the sale of her home. The agreement was on a printed form provided by FMLS, captioned, "Exclusive right to sell contract for listing property with First Multiple Listing Service, Inc., Atlanta, Georgia." It was executed by the appellant as "owner," by Kay Riegal (a sales agent employed by Harry Norman, Inc.) as "broker's authorized agent," and by Jim Campbell, a vice-president of Harry Norman, Inc., on behalf of the "company." The agreement specified that "members of FMLS may act in association with broker in procuring or attempting to procure a purchaser" and further specified that the owner would be obligated to pay the broker a sales commission "in the event broker or any member of FMLS procures a [purchaser]. . . ."

Prior to executing the agreement, the appellant expressed concern to Riegal about the security risks involved in using a lock box, but was advised by the latter that in her 15 years of selling real estate, the only problem she had encountered in this connection was a missing ashtray. The appellant thereafter delivered a house key to Riegal for placement in the lock box. Although the box was owned by Harry Norman, Inc., FMLS retained ownership of Riegal's key to it pursuant to the terms of a "title key agreement" it had entered into with her. There was evidence that FMLS was aware that during the preceding year there had been approximately 16 burglaries of residences in the metropolitan Atlanta area where lock boxes were being used; and the appellant averred that if she had been informed of this, she would not have authorized the use of a lock box at her home. It is undisputed that Riegal had no knowledge of these burglaries at the

time the appellant questioned her about the security risks involved in using a lock box; however, there is a dispute as to whether Harry Norman, Inc., had such knowledge. The appellant testified during her deposition that after her home was burglarized, both Harry Norman and Jim Campbell (the vice-president for Harry Norman, Inc., who had signed the exclusive listing agreement on the company's behalf) told her that other lock box burglaries had occurred prior to hers; however, both men denied this. *Held*:

1. The trial court erred in concluding as a matter of law that Harry Norman, Inc., owed no duty of care to the appellant. There is no question that Harry Norman, Inc., was a party to the listing agreement at issue in this case; and when a homeowner and a broker enter into such an agreement, the relation of principal and agent clearly is established between them. See *Dolvin Realty Co. v. Holley*, 203 Ga. 618, 622 (48 SE2d 109) (1948); *Johnson Realty v. Hand*, 189 Ga. App. 706 (6) (377 SE2d 176) (1988). See generally OCGA § 10-6-1.

A principal-agent relationship is, of course, fiduciary in character, imposing upon the agent the duty to exercise the utmost good faith toward the principal. See *Reisman v. Massey*, 84 Ga. App. 796 (1) (67 SE2d 585) (1951); OCGA § 23-2-28. "Where a confidential relationship exists, concealment when there is a duty to disclose, if resulting in injury is itself actionable fraud." *Scott v. Lumpkin*, 153 Ga. App. 17, 19 (264 SE2d 514) (1980). We conclude that a question of fact exists in this case as to whether Harry Norman, Inc., breached a fiduciary duty to the appellant in failing to disclose to her information allegedly in its possession regarding the occurrence of other "lock box burglaries" in the Atlanta metropolitan area.

2. We conclude that an issue of fact also exists as to whether FMLS breached a duty to the appellant by failing to exercise due care in maintaining the integrity of its box system and preventing unauthorized access to them. " 'The most common test of negligence is whether the consequences of the alleged wrongful act are reasonably to be foreseen as injurious to others coming within the range of such acts, and what is reasonably to be foreseen is generally a question for the jury. (Cits.) The question for the jury is whether danger should have been recognized by common experience, or by the special experience of the alleged wrongdoer, or by a person of ordinary prudence and foresight (cits.).' [Cit.]" *Stuckey's Carriage Inn v. Phillips*, 122 Ga. App. 681, 689 (178 SE2d 543) (1970).

There was evidence that FMLS had "concerns" about the previous burglaries involving its lock boxes and was in contact with local police concerning them but that its board of directors had made a deliberate decision not to communicate that information to its member brokers. Moreover, while FMLS normally changed locks on its lock boxes every three to four years, no such change had taken place

for five years preceding the burglary of the appellant's home. Based on the record currently before us, we are unable to conclude as a matter of law that FMLS has no liability to the appellant.

3. FMLS contends that even if it was guilty of negligence with respect to the maintenance of its lock boxes, it was nevertheless insulated from liability under an indemnification clause contained in the listing agreement, by which the owner agreed to hold FMLS harmless on any claims "which result from any negligent acts of persons who are employees of FMLS, whenever said acts occur during the period of this agreement." As previously indicated, the appellant's claim against FMLS is predicated on evidence that FMLS made a deliberate decision, through its board of directors, to withhold information from its member brokers concerning other "lock box burglaries" in the metropolitan Atlanta area. Because the corporation's alleged liability is predicated on its own official actions as a corporation rather than on the negligence of individual employees, we hold that it is not shielded from liability by this indemnity clause. Cf. *Peck v. Rollins Protective Svcs.*, 189 Ga. App. 381 (2) (375 SE2d 494) (1988).

4. The appellant contends that the trial court erred in ruling that no bailment was created between her and the appellees with respect to her house key. "A bailment is a delivery of goods or property upon a contract, express or implied, to carry out the execution of a special object beneficial either to the bailor or bailee or both and to dispose of the property in conformity with the purpose of the trust." OCGA § 44-12-40. "In order to constitute a bailment, it is essential that the bailee acquire an independent and temporarily exclusive possession of the property." *A.A.A. Parking v. Bigger*, 113 Ga. App. 578, 583 (149 SE2d 255) (1966). It was established in this case that approximately 7,000 real estate agents had access to the appellant's house key by virtue of the lock box keys distributed by FMLS. Under these circumstances, the appellees clearly did not have "exclusive possession" of the appellant's house key; and we consequently hold that the appellees were properly granted summary judgment on this theory of liability.

5. The evidence currently of record does not conclusively negate the appellant's allegation that the appellees acted with conscious disregard of her interests in continuing to utilize a lock box system the integrity of which was known to have been compromised. We accordingly hold that the trial court erred in awarding them summary judgment on the appellant's punitive damage claim. See generally *Gaither v. Barclaysamerican/Financial of Ga.*, 194 Ga. App. 188 (390 SE2d 97) (1990).

*Judgment affirmed in part and reversed in part. Birdsong, P. J., and Cooper, J., concur.*

DECIDED MARCH 8, 1991 —
REHEARINGS DENIED MARCH 15, 1991 AND MARCH 25, 1991 —

*Stowers, Hayes, Clark & Roane, E. Hearst Roane, Jr.*, for appellant.

*McCalla, Raymer, Padrick, Cobb & Nichols, Daniel D. Phelan, Carol V. Clark*, for appellees.