A09A1039. PRECISION PLANNING, INC. v. RICHMARK COMMUNITIES, INC. et al.
(679 SE2d 43)

BLACKBURN, Presiding Judge.

Richmark Communities, Inc. and Richardson Housing Group, Inc. (collectively the "developer") sued Precision Planning, Inc. (the "architect") for breach of contract and professional negligence when a retaining wall designed by the architect failed. The architect moved for partial summary judgment, seeking to enforce a provision of the contract between the architect and the developer that limited the architect's liability to the amount paid the architect under the contract or to $50,000, whichever amount was greater. Finding this contract provision unenforceable, the court denied the architect's motion for partial summary judgment. We hold that the limiting provision was enforceable and therefore reverse.

The issues of contract construction and enforceability are generally questions of law for a court to resolve and are therefore subject to de novo review on appeal. See *Barron Reed Constr. v. 430, LLC*;[1] *Mon Ami Intl. v. Gale*.[2] The undisputed facts show that in July 2001, the developer hired the architect, pursuant to a written agreement, to design (among other things) a retaining wall for a detention pond in a residential development. In paragraph D, the contract limited the architect's liability as to the developer (for any errors or professional negligence of the architect) to the amount of $50,000 or to the amount of the architect's fee, whichever amount was greater. The contract also contained an indemnity clause in paragraph E that required the developer to indemnify the architect for any liability to third parties in excess of the $50,000/amount-of-fee limit, except for injury or loss caused by the architect's sole negligence or wilful misconduct. The retaining wall designed by the architect failed, and the developer sued the architect and the company that constructed the wall for negligence and breach of contract.

The architect moved for partial summary judgment to limit its liability to the $50,000/amount-of-fee cap referenced in the contract. The trial court denied the motion, finding that the limitation provision violated former OCGA § 13-8-2 (b) (2001) and was there-

---

[1] *Barron Reed Constr. v. 430, LLC*, 275 Ga. App. 884, 885 (1) (622 SE2d 83) (2005).
[2] *Mon Ami Intl. v. Gale*, 264 Ga. App. 739, 740 (1) (592 SE2d 83) (2003).

fore void as against public policy. With leave of this Court, the architect appealed.

1. The primary question before this Court is whether the contract provision found in paragraph D, which capped the architect's liability to the developer, was void as against public policy. Paragraph D provided:

> It is agreed that the [developer] will limit any and all liability for any damage on account of any error, omission or other professional negligence to a sum not to exceed $50,000 or the amount of the fee, whichever is greater. If [the developer] prefers to have higher limits of professional liability, the limits can be increased to a maximum of one million ($1,000,000.00) dollars upon [the developer's] written request at the time of acceptance of this proposal provided that [the developer agrees to pay additional specified consideration].

The developer did not exercise the option of the higher limits.

In considering whether a contract provision is void as against public policy, we "follow the rule that the courts must exercise extreme caution in declaring a contract void as against public policy and should do so only in cases free from doubt." (Punctuation omitted.) *Emory Univ. v. Porubiansky.*[3] See *Edwards v. Grapefields, Inc.*[4] ("the power of the courts to declare a contract void for being in contravention of a sound public policy is a very delicate and undefined power, and, like the power to declare a statute unconstitutional, should be exercised only in cases free from doubt") (punctuation omitted). Moreover, because parties have the right to freely contract on any terms they desire, "any impairment of that right must be specifically expressed or necessarily implied by the legislature in a statutory prohibition and not left to speculation." (Punctuation omitted.) *Piedmont Arbors Condo. Assn. v. BPI Constr. Co.*[5]

"In Georgia there is no generally applicable rule of law forbidding one contracting party from waiving all recourse in the event of breach by the other." (Punctuation omitted.) *Imaging Systems Intl. v. Magnetic Resonance Plus.*[6] Indeed, "[a]s a general rule[,] a party may contract away liability to the other party for the consequences

---

[3] *Emory Univ. v. Porubiansky*, 248 Ga. 391, 393 (282 SE2d 903) (1981).

[4] *Edwards v. Grapefields, Inc.*, 267 Ga. App. 399, 403 (1) (599 SE2d 489) (2004).

[5] *Piedmont Arbors Condo. Assn. v. BPI Constr. Co.*, 197 Ga. App. 141, 141 (397 SE2d 611) (1990).

[6] *Imaging Systems Intl. v. Magnetic Resonance Plus*, 227 Ga. App. 641, 644 (1) (490 SE2d 124) (1997).

of his own negligence without contravening public policy, except when such an agreement is prohibited by statute." (Punctuation omitted.) *Lanier At McEver, L.P. v. Planners & Engineers Collaborative.*[7]

No statute prohibits a professional architect from contracting with a developer to limit the architect's liability to that developer. Contrary to the developer's argument, former OCGA § 13-8-2 (b) (2001),[8] which was in effect when the contract was executed,[9] did not apply to these circumstances. By its very language, it applied only to contract provisions "purporting to indemnify or hold harmless the promisee against liability for damages." See *Brainard v. McKinney*[10] (former OCGA § 13-8-2 (b) applied only to "an indemnification or hold harmless provision"). Paragraph D did not purport to indemnify or hold the architect harmless from damages but simply established a bargained-for cap on the liability of the architect to the developer for the architect's breach or negligence.

Accordingly, we hold that the architect and the developer were free to limit the architect's liability to the developer as set forth in paragraph D. See *Valhal Corp. v. Sullivan Assoc.*[11] The trial court erred in holding otherwise.

2. Nevertheless, the developer points to paragraph E as an indemnity clause that contravened former OCGA § 13-8-2 (b) (2001) and that, as such, it infected paragraph D with this same sickness of unenforceability. Paragraph E provided:

> The [developer] agrees to defend, indemnify and hold [the architect] harmless from any claim, liability or defense cost

---

[7] *Lanier At McEver, L.P. v. Planners & Engineers Collaborative*, 284 Ga. 204, 205 (1) (663 SE2d 240) (2008).

[8] Former OCGA § 13-8-2 (b) (2001) provided in full:
A covenant, promise, agreement, or understanding in or in connection with or collateral to a contract or agreement relative to the construction, alteration, repair, or maintenance of a building structure, appurtenances, and appliances, including moving, demolition, and excavating connected therewith, purporting to indemnify or hold harmless the promisee against liability for damages arising out of bodily injury to persons or damage to property caused by or resulting from the sole negligence of the promisee, his agents or employees, or indemnitee is against public policy and is void and unenforceable, provided that this subsection shall not affect the validity of any insurance contract, workers' compensation, or agreement issued by an admitted insurer.

[9] To determine the enforceability of a contract, we look to the law in effect at the time the contract was executed. See *Gainesville Financial Svcs. v. McDougal*, 154 Ga. App. 820, 821 (270 SE2d 40) (1980). In any case, the 2007 amendment of OCGA § 13-8-2 (b) continued to apply the statute only to provisions that required one party to the contract to "indemnify, hold harmless, insure, or defend the other party to the contract." Ga. L. 2007, p. 208, § 1.

[10] *Brainard v. McKinney*, 220 Ga. App. 329, 330 (1) (469 SE2d 441) (1996) (physical precedent only).

[11] *Valhal Corp. v. Sullivan Assoc.*, 44 F3d 195, 204-206 (II) (B) (2) (3d Cir. 1995).

in excess of the limits determined above for injury or loss sustained by any party from exposure allegedly caused by [the architect's] performance of services hereunder, except for injury or loss caused by the sole negligence or willful misconduct of [the architect].

Significantly, this additional provision did not purport to modify the terms of paragraph D which pertained to the architect's liability to the developer, but instead simply gave the architect limited protection from third-party liability by requiring the developer to indemnify the architect from third-party liability where such liability exceeded the $50,000/amount-of-fee limit and did not arise out of the architect's sole negligence or wilful misconduct. Accordingly, even if paragraph E were unenforceable, it would not affect the enforceability of paragraph D.

Moreover, this indemnity provision in paragraph E did not contravene former OCGA § 13-8-2 (b) (2001) in any case. That statute declared void construction-related contracts that purported "to indemnify or hold harmless the promisee against liability for damages arising out of bodily injury to persons or damage to property *caused by or resulting from the sole negligence of the promisee*, his agents or employees, or indemnitee. . . ." (Emphasis supplied.) Former OCGA § 13-8-2 (b) (2001). Here, the indemnity in paragraph E expressly excluded from its coverage "injury or loss caused by the sole negligence or willful misconduct of" the architect. Because "[t]he purpose of OCGA § 13-8-2 (b) is to prevent a building contractor [or architect] from contracting away liability for accidents *caused solely by his negligence*," it is the "complete avoidance of liability to third parties *for sole negligence* in a building contract [that] is . . . what OCGA § 13-8-2 (b) prohibits." (Punctuation omitted; emphasis supplied.) *Lanier At McEver*, supra, 284 Ga. at 206-207 (1) & (2). See id. at 207 (2) (OCGA § 13-8-2 (b) does not permit "a construction party to shift its third-party liability *for its sole negligence* to another contractor") (emphasis supplied). Since paragraph E specifically excluded the architect's sole negligence from the indemnity obligation of the developer, we will not go beyond the language of the statute and void an indemnity obligation covering other circumstances. See *Piedmont Arbors Condo. Assn.*, supra, 197 Ga. App. at 141 ("any impairment of [a freedom-to-contract] right must be specifically expressed or necessarily implied by the legislature in a statutory prohibition and not left to speculation").

The trial court erred in finding paragraphs D and E unenforceable. The court should have granted the architect's motion for partial summary judgment, which sought to enforce paragraph D.

*Judgment reversed. Adams and Doyle, JJ., concur.*

DECIDED MAY 8, 2009 —
RECONSIDERATION DENIED MAY 21, 2009 —

*Carlock, Copeland & Stair, Gregory H. Wheeler*, for appellant.
*Webb, Tanner, Powell, Mertz & Wilson, Anthony O. L. Powell,
James E. Carlson*, for appellees.