### A09A0872. RSN PROPERTIES, INC. v. ENGINEERING CONSULTING SERVICES, LTD.
(686 SE2d 853)

ANDREWS, Presiding Judge.

We consider the enforceability of a limitation of liability provision contained in a written contract by which a real estate developer hired an engineering firm to perform professional engineering services necessary for development of a residential subdivision. The provision limited the liability of the engineering firm to the developer for engineering errors to the value of the engineering services or the sum of $50,000, whichever was greater. For the following reasons, we affirm the trial court's ruling that the provision did not violate public policy and was enforceable.

RSN Properties, Inc., a real estate developer, entered into a written contract employing Engineering Consulting Services, Ltd. (ECS), for the sum of $2,200, to perform soil studies and to render a professional engineering opinion on the suitability of using septic systems in a residential subdivision being developed by RSN in Paulding County. RSN sued ECS for breach of contract and negligence alleging that ECS inaccurately concluded that most of the building lots were suitable for septic systems; that RSN relied on ECS's inaccurate opinion to complete road and waterline construction necessary to obtain County approval for development of building lots; and that the County subsequently refused to approve development of many lots in the subdivision because they were not suitable for septic systems. Because RSN's suit sought more than $100,000 in damages, ECS defended in part and moved for partial summary judgment on the basis that the contract contained a limitation of liability provision which stated:

> [RSN] agrees to limit ECS's liability to [RSN] arising from ECS's professional acts, errors or omissions in performing

this Agreement, such that the total aggregate liability of ECS to [RSN] shall not exceed $50,000 or the value of services rendered, whichever is greater.

RSN moved for the trial court to strike the provision on the basis that it violated a public policy against limiting liability for professional engineering errors and was unenforceable. The trial court granted ECS's motion; denied RSN's motion; and ruled that the provision did not violate public policy and was enforceable.

On appeal, RSN claims that the limitation of liability provision is unenforceable because it violates Georgia public policy. Under OCGA § 13-8-2 (a),

[a] contract which is against the policy of the law cannot be enforced. Contracts deemed contrary to public policy include but are not limited to:

(1) Contracts tending to corrupt legislation or the judiciary;

(2) Contracts in general restraint of trade, as distinguished from contracts in partial restraint of trade as provided for in Code Section 13-8-2.1;

(3) Contracts to evade or oppose the revenue laws of another country;

(4) Wagering contracts; or

(5) Contracts of maintenance or champerty.

The provision at issue does not create a contractual obligation listed in OCGA § 13-8-2 (a) as contrary to public policy, and we find that the provision is not otherwise contrary to the public policy underlying the statute. "[T]he courts must exercise extreme caution in declaring a contract void as against public policy and should do so only in cases free from doubt." (Citation and punctuation omitted.) *Emory Univ. v. Porubiansky*, 248 Ga. 391, 393 (282 SE2d 903) (1981). "[U]nless prohibited by statute or public policy[,] the parties to a contract are free to contract on any terms and about any subject matter in which they have an interest. . . ." (Citation and punctuation omitted.) *Piedmont Arbors Condo. Assn. v. BPI Constr. Co.*, 197 Ga. App. 141 (397 SE2d 611) (1990). See *Camp v. Aetna Ins. Co.*, 170 Ga. 46, 50-51 (152 SE 41) (1930).

A contract can not be said to be contrary to public policy unless the General Assembly has declared it to be so, or unless the consideration of the contract is contrary to good morals and contrary to law, or unless the contract is entered

into for the purpose of effecting an illegal or immoral agreement or doing something which is in violation of law.

Id. at 50. "As a general rule[,] a party may contract away liability to the other party for the consequences of his own negligence without contravening public policy, except when such an agreement is prohibited by statute." (Citation and punctuation omitted.) *Lanier At McEver, L.P. v. Planners and Engineers Collaborative*, 284 Ga. 204, 205 (663 SE2d 240) (2008).

We find no statute that prohibited ECS from contracting with a real estate developer to limit its liability to the developer for professional engineering services. Compare *Precision Planning v. Richmark Communities*, 298 Ga. App. 78, 80 (679 SE2d 43) (2009) (no statute prohibits professional architect from limiting liability to developer). Professional engineers are subject to statutory regulation which requires adherence to rules of professional conduct and practice designed to protect the safety, health, and welfare of the public. OCGA § 43-15-1 et seq. Nevertheless, the public policy expressed in these regulations was not violated by the limitation of liability provision in the contract between ECS and RSN. In this case, a real estate developer (RSN) and an engineering firm (ECS) — parties in relatively equal bargaining positions in a commercial setting — contracted for the provision of professional engineering services necessary for a residential development. On a contract for ECS to perform $2,200 of engineering services related to the development, the parties exercised business judgment in agreeing to limit ECS's liability to RSN for engineering errors to no more than $50,000. Generally, inclusion of a limitation of liability provision in a contract of this nature recognizes that the fee for the service is small compared to the substantial liability which could arise from an error in providing the service. The provision reflects an arms-length bargain to perform the service at the agreed-upon fee in return for the liability cap. The limitation of liability provision did not release ECS from liability for its engineering errors. ECS remained liable to RSN for its errors up to $50,000. Nothing in the contract exculpates, holds harmless, or otherwise limits ECS's liability to third parties. *Samuelson v. Lord, Aeck & Sergeant, Inc.*, 205 Ga. App. 568, 571-572 (423 SE2d 268) (1992) (apart from the contract, ECS engineers had a duty not to negligently harm third persons). Although the limitation of liability provision capped ECS's liability to RSN, ECS remained substantially responsible for its professional errors and retained the incentive to perform engineering services with due regard for the safety, health, and welfare of the public. *Precision Planning*, supra; see *Valhal Corp. v. Sullivan Assoc.*, 44 F3d 195, 202-204 (3rd Cir. 1995). Under these circumstances, we find that the

limitation of liability provision in the contract represented a reasonable allocation of risks in an arms-length business transaction, and did not violate the public policy underlying OCGA § 13-8-2 (a) or the public policy for professional engineering practice set forth in OCGA § 43-15-1 et seq. *Precision Planning*, supra; see *Blaylock Grading Co. v. Smith*, 658 SE2d 680, 682-684 (N. C. App. 2008).[1]

*Judgment affirmed. Miller, C. J., and Barnes, J., concur.*

DECIDED NOVEMBER 16, 2009 — 

*Clark & Clark, Herman Clark, James C. Morton*, for appellant.
*Carlock, Copeland & Stair, Gregory H. Wheeler, Broderick W. Harrell*, for appellee.

---

[1] RSN also claims that, even if the limitation of liability provision did not violate public policy and was enforceable, another provision in the contract rendered ambiguous the limit of damages agreed to by the parties. We do not address this issue, which was not raised in the motions below or ruled on by the trial court.