**THIRD DIVISION**
**MIKELL, P. J.,**
**MILLER and BLACKWELL, JJ.**

**NOTICE: Motions for reconsideration must be**
**_physically received_ in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)**
**http://www.gaappeals.us/rules/**

**June 12, 2012**

# In the Court of Appeals of Georgia

A12A0522. SILVER PIGEON PROPERTIES, LLC v. FICKLING
& COMPANY, INC.

MIKELL, Presiding Judge.

Silver Pigeon Properties, LLC (Silver Pigeon) appeals from the trial court's grant of summary judgment in favor of Fickling & Company (Fickling) on Fickling's claim for breach of a Management Agreement and enforcement of liens for real estate brokerage commissions. Finding no error, we affirm.

A trial court properly grants summary judgment when there is no genuine issue of material fact and the movant demonstrates entitlement to judgment as a matter of law.[1] We review a grant of summary judgment de novo, and we view the evidence in a light most favorable to the nonmovant.[2]

---

[1] *AKA Mgmt. v. Branch Banking & Trust Co.*, 275 Ga. App. 615, 616 (621 SE2d 576) (2005).

[2] Id.

So viewed, the evidence was that Ginny Wyatt, an independent agent of Fickling, obtained a lease by the United States Air Force of the property located at 1000 Corporate Pointe, Warner Robbins, Georgia, on March 1, 2006, from Corporate Village, Inc., the then-owner of the property. A Supplemental Agreement between the same parties was entered into extending the term of the lease from March 1, 2007 through February 28, 2009.

Silver Pigeon purchased the property in April 2008. According to John Dukes, a real estate broker and member of Silver Pigeon, and Wyatt of Fickling, they negotiated the Management Agreement between the parties.[3] That agreement contains the following clauses which are at issue here. The second introductory clause, labeled "EXCLUSIVE," states:

"The Owner hereby employs the Agent exclusively to rent, lease, operate and manage the property known as 1000 Corporate Pointe, . . . upon the terms hereinafter set forth for the period of One (1) year beginning on the 16th day of April, 2008, and ending on the 31st day of March, 2009 and thereafter for annual periods." (Punctuation omitted.)

The section labeled "SAVE HARMLESS" provides in pertinent part:

[3] It is unclear from the record who actually drafted the agreement.

2

3. The Owner further agrees: . . . (d) to pay the Agent: (1) For Management and Leasing: Agent shall be paid the amount of 6% of operating income collected on all existing and new leases entered into *for as long as such existing and new tenants occupy space on the property*. Said 6% shall be vested and include management of the property.

(Emphasis supplied.)

After expiration of the original extended lease term in March 2009, Silver Pigeon continued to accept Fickling's management and leasing services and continued to pay commissions to Fickling as provided in the agreement.[4] On August 31, 2009, Fickling received a letter from Silver Pigeon's John Dukes, advising that, effective September 1, 2009, Silver Pigeon was taking over management of the property. Fickling received no commissions after September 1, 2009, although the Air Force continued to lease the space until approximately March 2011.

Fickling sued for breach of contract, foreclosure of several broker's liens filed on the property, and attorney fees. Silver Pigeon filed its answer and counterclaim, seeking a declaratory judgment that the renewal clause was not valid, that the liens

---

[4] Prior to the expiration of the original lease term, Wyatt had negotiated a lease extension with the Air Force.

3

were not properly filed, and that the agreement was "null, void, illegal and unenforceable" for failure to comply with the rules of the Georgia Real Estate Commission "regarding the requirement for a management agreement to provide the terms and conditions for its termination."

Both parties filed motions for summary judgment and, on September 8, 2011, the trial court entered its order granting Fickling's motion for summary judgment, concluding that Fickling was "entitled to recover from . . . Silver Pigeon . . . , commissions of 6% of monthly rental through the date Tenant vacated the property. The issue of attorney's fees is reserved."[5]

1. In its first enumeration, Silver Pigeon argues that the trial court erred in finding that the management agreement was not void as violative of public policy.

(a) Silver Pigeon argues that, because the management agreement did not provide the terms and conditions for termination of the property management agreement by the broker or owner of the property, as required by Rule 520-1-.06 (2) (a) (8) of the Georgia Real Estate Commission, it was void as violative of public policy.

_____

[5] No ruling was made regarding the liens.

4

Silver Pigeon acknowledges in its brief, however, that, in order for this court to overturn the trial court's decision, it would be necessary for us to overturn the whole court decision in *Johnson Realty, Inc. v. Hand*.[6] We decline to do so, however, for we find the rationale and ruling of that case sound. As stated therein:

> Accordingly, the rules and regulations promulgated by the Supreme Court, through its inherent power, and by the Public Service Commission, through its delegated authority from the legislature, supplant the necessity for enactment of statutory provisions with reference to the manner in which the applicable profession is actually to be conducted and, having the same force and effect as the supplanted statutes, those rules and regulations become the controlling legal standards of professional conduct. *However, unlike the Supreme Court, the Georgia Real Estate Commission has no inherent power over the real estate profession in this state and, unlike the Public Service Commission, the legislature has not delegated to the Georgia Real Estate Commission plenary quasi-legislative power over the general conduct of the real estate business.* The General Assembly has determined that it will retain its legislative power to control the manner in which the real estate business is actually to be conducted, and has granted the Georgia Real Estate Commission only the limited quasi-legislative power to determine who is qualified to practice the real

---

[6] 189 Ga. App. 706 (377 SE2d 176) (1988).

estate business in this state. Pursuant to O.C.G.A. § 43-40-1 et seq., the Georgia Real Estate Commission is authorized only to promulgate rules and regulations which are "regulatory in nature. Those rules and regulations are limited to action by the Georgia Real Estate Commission in the exercise of its licensing powers." Accordingly, the rules and regulations recognize "certain minimum standards for persons engaged in the real estate business." . . . It follows that the rules and regulations of the Georgia Real Estate Commission have the same force and effect as that of statutes in the area of licensing and, to keep his license, a realtor must therefore comply with them.[7]

(Emphasis supplied.)

Even assuming that the management agreement was in violation of a regulation of the Georgia Real Estate Commission because it failed to include the terms and conditions of its termination, this did not render it in violation of public policy as urged by Silver Pigeon.[8]

---

[7] (Citations and punctuation omitted; emphasis supplied.) Id. at 709-710 (3).

[8] *Johnson Realty*, supra; see also *Edwards v. Grapefields, Inc.*, 267 Ga. App. 399, 401-406 (1) (599 SE2d 489) (2004) (contract allegedly in violation of the Rules of the Department of Revenue deemed not in violation of public policy); cf. *RSN Properties v. Engineering Consulting Svcs., Ltd.*, 301 Ga. App. 52 (686 SE2d 853) (2009); *Precision Planning v. Richmark Communities*, 298 Ga. App. 78-80 (1) (679 SE2d 43) (2009) (contracts limiting professional liability not void as violative of public policy).

(b) The argument made here by Silver Pigeon based on the Rule Against Perpetuities[9] was not made below and will not be considered here for the first time.[10]

2. Silver Pigeon's final enumeration is that the trial court erred in awarding commissions of 6% through the date when the Air Force vacated the premises.

"The issues of contract construction and enforceability are generally questions of law for a court to resolve and are therefore subject to de novo review on appeal."[11]

The provision of the management agreement regarding commissions could not be clearer – Silver Pigeon was obligated to pay "the amount of 6% of operating income collected *on all existing . . . leases entered into for as long as such existing . . . tenants occupy space on the property*. (Emphasis supplied.)

There was no error in the trial court's grant of summary judgment to Fickling on this issue.

*Judgment affirmed. Miller and Blackwell, JJ., concur.*

---

[9] OCGA § 44-6-200 et seq.

[10] Generally, "[a]n argument not raised in the trial court is waived and cannot be raised for the first time on appeal." (Footnote omitted.) *Locke's Graphic & Vinyl Signs v. Citicorp Vendor Finance*, 285 Ga. App. 826, 828 (2) (a) (648 SE2d 156) (2007).

[11] (Citation omitted.) *Precision Planning*, supra at 78.