### A02A1269. MAGNER et al. v. ONE SECURITIES CORPORATION et al.
#### (574 SE2d 555)

ELLINGTON, Judge.

Richard E. Magner and the Magner Family, LLC appeal from the superior court order granting summary judgment to One Securities Corporation ("OSC") and Benefit Plan Services, Inc. ("BPS") in this declaratory judgment action. Appellees OSC and BPS sought a declaration establishing whether Magner or the LLC preserved any right of dissent to mergers which cashed out Magner's minority shareholder interest in the corporations. In the event the court concluded such dissenters' rights existed, OSC and BPS asked for a judicial appraisal of the value of that interest. Magner and the LLC counterclaimed, challenging the validity of the mergers and seeking rescission. OSC and BPS moved for summary judgment on whether Magner or the LLC had dissenters' rights. The parties filed cross-motions for summary judgment on Magner's and the LLC's counterclaim regarding the validity of the mergers. The court entered summary judgment in favor of the corporations on both motions, concluding the mergers were valid and that neither Magner nor the LLC had dissenters' rights. Finding no reversible error, we affirm.

---

[9] Compare *Spray*, supra.

Summary judgment is appropriate under OCGA § 9-11-56 "when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." (Punctuation omitted.) *Dover v. Mathis*, 249 Ga. App. 753 (549 SE2d 541) (2001). We apply a de novo standard of appellate review and "view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant." (Punctuation omitted.) Id. See *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

Viewed in this light, the record reveals the following relevant facts. OSC and BPS are private, closely held Subchapter S corporations that designed, sold, and administered employee compensation and benefit plans. Barbara and Ronald Balser owned two-thirds of the corporations; Magner owned one-third. The boards of both corporations were comprised of the Balsers, O. C. Russell, and Stephen Berman.[1] On March 22, 1999, the corporations held a joint board of directors meeting. Each of the directors received or waived notice of the meeting. At this meeting, the directors approved a plan to merge OSC and BPS into Giotto, Inc. and Giotto Administrative Services, Inc., respectively, shell corporations created for this purpose a year before. The purpose of the mergers, which the directors had been discussing for several months before the meeting, was to cash out Magner's interest in the corporations. The directors agreed to pay Magner the "fair value" of his stock, an amount that had been determined by an independent appraiser.[2] The directors determined that OSC and BPS would be the corporate entities surviving the mergers and the Balsers would remain as the sole shareholders of the merged corporations. The directors set the record date for shareholders entitled to vote on the mergers as March 25, 1999. Finally, the directors authorized the senior management of both corporations to work with legal counsel to effect the mergers.

On March 26, 1999, the boards notified Magner in writing that a special shareholders' meeting of both corporations would be held on April 6, 1999, to vote on the merger plans. The notices set the record date, named the merging and surviving corporations, and advised Magner of his dissenters' rights. A plan of merger was attached to the notices. The attached plan of merger, however, contained a typographical error listing the fair value of all of Magner's stock as the price per share. Consequently, on April 3, 1999, the boards sent

[1] Magner was not a board member during the relevant time period. He was removed as a director in 1997.

[2] The corporations retained Phillips Hitchner Group, Inc. to establish the fair value of Magner's stock as of March 12, 1999. Prior to the March 22 meeting, the appraisers, in a draft report, set the value of Magner's 100 shares of OSC at $715,000 and 100 shares of BPS at $216,667. This draft report was either delivered to, or the substance of it was communicated to, each board member prior to the March 22 meeting.

Magner a corrected notice and rescheduled the meeting for April 15, 1999.

On April 9, 1999, Magner wrote the corporations instructing them to cancel his shares in OSC and BPS and to reissue them to the LLC effective April 14. Although Magner asserted he did this "for estate planning and asset protection purposes,"[3] it appears everyone understood that transferring Magner's stock into a limited liability company could destroy the corporations' Subchapter S status and result in increased tax liability. Through counsel, the corporations wrote Magner and asked him not to make the transfer, informing him of the tax consequences of that act. The corporations assert that Magner, through his attorney, agreed to postpone the decision to cancel his shares and to reissue the stock to the LLC. Magner, however, claims the corporations simply failed to honor his request to make the transfer. In any event, the corporations sought legal and tax advice and determined an argument existed for preserving Subchapter S status if the direction of the mergers was reversed, allowing the Giotto shell corporations to be the surviving entities. Consequently, on April 15, 1999, the board reissued its notice of meeting to Magner, stating that the shell entities would survive the merger, and rescheduled the meeting to April 26, 1999. The notice, like all previous notices, was attached to a plan of merger.

On April 26, 1999, OSC and BPS held a special meeting of shareholders. The Balsers, representing the majority of the shareholders, approved and adopted the merger agreements between the corporations and the shell entities as proposed. Magner, who attended the meeting through counsel, did not vote on either merger. During the meeting, the Balsers' stock was retired and Magner's stock was converted into the right to receive cash in the amount previously established as the stock's fair value. The mergers became effective on April 27, 1999, when the Certificates of Merger and Name Change were filed with the Secretary of State.

On May 4, OSC and BPS notified Magner of his dissenters' rights, offered him the established fair value of his stock, and directed him to demand payment and tender his shares to the corporations by June 7, 1999, if he intended to perfect his dissenters' rights. Instead, on May 12, Magner demanded that his stock in both corporations be recorded as having been transferred to the LLC as of April 14, 1999. The corporations complied with Magner's request, reissuing the stock of OSC and BPS to the Magner Family, LLC, as of

---

[3] In a summary judgment brief, Magner admitted a different motive for the stock transfer: "[By] eliminating the Subchapter S status for OSC and BPS, Magner hoped to create tax disincentives for the Balsers to transfer assets and income from MCG and FDS ([other] companies in which Magner retained an interest) to OSC and BPS (companies from which the Balsers were attempting to squeeze-out Magner)."

April 14, 1999. On June 7, both Magner and the LLC delivered to the corporations documents entitled "Dissenter's Demand for Payment" and tendered the LLC's stock certificates. On June 11, OSC and BPS informed Magner and the LLC that because Magner cancelled his shares, he forfeited his dissenters' rights. Moreover, because the LLC was not a shareholder of record in either corporation on March 25, 1999, it was not entitled to dissent. Again, the corporations offered to pay Magner the appraised fair value of his interest. Magner rejected the offer and, instead, demanded over $16 million for his combined interest in both corporations. On September 3, 1999, the corporations filed the instant declaratory judgment action, or, in the alternative, sought a judicial appraisal pursuant to OCGA § 14-2-1330.

1. Magner and the LLC contend the trial court erred in failing to declare the mergers void.

First, in the absence of fraud or illegality, Magner's exclusive remedy with respect to the cash-out mergers was to dissent and seek payment for the fair value of his shares in accordance with the Code. OCGA § 14-2-1302 (b). See *Grace Bros. v. Farley Indus.*, 264 Ga. 817, 821 (3) (450 SE2d 814) (1995); *Lewis v. Turner Broadcasting System*, 232 Ga. App. 831, 833 (3) (503 SE2d 81) (1998). As the commentary to this Code section explains:

> [W]hen a majority of shareholders has approved a corporate change, the corporation should be permitted to proceed even if a minority considers the change unwise or disadvanta-geous, and persuades a court that this is correct. Since dis-senting shareholders can obtain the fair value of their shares, they are protected from pecuniary loss. Thus in gen-eral terms an exclusivity principle is justified.

Commentary to OCGA § 14-2-1302 (b). Magner, who failed to perfect his dissenters' rights, see Division 2, infra, seeks to rescind the merg-ers and avoid the consequences of his election. He does so by contend-ing the directors failed to comply with the statutory requirements for merger in a number of ways. We find each of these arguments with-out merit.

(a) *The Boards of Directors Properly Adopted the Plans of Merger.* Contrary to Magner's contention, the evidence adduced demonstrates that the boards complied with the requirements for adopting the pro-posed plans of merger. OCGA § 14-2-1101 provides, in relevant part:

> (a) One or more corporations may merge into another corpo-ration if the board of directors of each corporation adopts and its shareholders (if required by Code Section 14-2-1103) approve a plan of merger. (b) The plan of merger must set forth: (1) The name of each corporation planning to merge and the name of the surviving corporation into which each

other corporation plans to merge; (2) The terms and conditions of the merger; and (3) The manner and basis of converting the shares of each corporation into shares, obligations, or other securities of the surviving or any other corporation or into cash or other property in whole or in part.

The evidence adduced demonstrates that the boards of directors of OSC and BPS met jointly on March 22, 1999, to consider the cash-out mergers. The corporate minutes[4] from this meeting, the March 24 unanimous consents,[5] and the affidavit and deposition testimony of the directors all abundantly demonstrate: (1) that a meeting occurred on March 22, 1999, (2) that the directors received or waived notice of it, (3) that the directors discussed merging OSC and BPS into the Giotto entities, with the original corporations surviving, (4) that the terms and conditions of the mergers[6] were discussed, (5) that the directors agreed to convert Magner's shares to cash in the amounts recommended by the appraiser, (6) that a record date for shareholders entitled to vote was set, and (7) that the plans of merger were adopted by a majority vote. The evidence adduced demonstrates that the boards of OSC and BPS complied with the procedural requirements of OCGA § 14-2-1101 (a), (b).

(b) *The Record Date Was Properly Set.* Magner also contends the record date was improper because it was not a "future" date as required by OCGA § 14-2-707 (a). The evidence shows that on March 22, 1999, the combined boards set the record date as March 25, 1999 — a date that was, at that point, three days in the future. We see no merit to Magner's argument that the boards' rescheduling of the

---

[4] Magner contends the official minutes of the March 22 meeting are "false" because they were reduced to writing after the meeting. We have found no law, nor has Magner cited any, suggesting that minutes must be put into a final, written form contemporaneously with the events they memorialize. Absent a credible challenge to the reliability and validity of the minutes, the trial court did not err in considering them. This is especially so since official minutes of corporate meetings are generally considered the best evidence of corporate business transacted. See *South Ga. Trust Co. v. Crandall*, 47 Ga. App. 328 (1) (170 SE 333) (1933); *Lucas v. Bechtel Corp.*, 800 F2d 839, 849 (2) (B) (1) (9th Cir. 1986).

[5] Magner complains the consent documents purportedly signed on March 24 were ineffective to adopt the plan of merger since they were drafted after the April 26 shareholders' meeting and "back dated." Pretermitting whether they were sufficient to effect action without a meeting, pursuant to OCGA § 14-2-821, they are, nevertheless, some evidence of the merger plan and its terms.

[6] Magner asserts that a plan of merger was not adopted during the March 22 meeting because it had not been reduced to final form before the meeting and presented to the directors for their approval at that time. We see nothing in OCGA § 14-2-1101 requiring such a formality. It appears from the record that the board members were each fully apprised of the essential terms of the plan of merger, that they discussed those terms, and that they adopted a plan which was shortly thereafter reduced to writing and attached to the meeting minutes. This plan was mailed to Magner as an attachment to his Notice of Shareholder Meeting.

shareholders' meeting in some way made the record date "retroactive." This Code section limits to 70 days the period of time that may transpire between the record date and the meeting or action requiring the determination of shareholders. See OCGA § 14-2-707 (b). Implicitly, a meeting may be scheduled — or rescheduled — at any time within the time limits set by the Code, so long as proper notice is given. In fact, OCGA § 14-2-707 (c) even permits a meeting to be adjourned to a future date without setting a new record date so long as the meeting is not "adjourned to a date more than 120 days after the date fixed for the original meeting." Id. See OCGA § 14-2-707 (d) (setting record date when a meeting adjourned beyond the 120-day period).

(c) *The Final Plans of Merger Were Materially the Same as Those Proposed.* Magner contends the mergers should be rescinded because the plans of merger changed twice between the March 22, 1999 joint board meeting and the shareholders' April 26, 1999 meeting. Interestingly, however, he makes no legal argument in his brief explaining how any change violated Georgia law, was material to the mergers, or affected his rights. Magner argues that OCGA § 14-2-1103 (a) requires that the plans of merger adopted by the boards be *identical* in every respect to the ones submitted to the shareholders. However, that statute, in relevant part, provides:

> After adopting a plan of merger or share exchange, the board of directors of each corporation party to the merger and the board of directors of the corporation whose shares will be acquired in the share exchange shall submit the plan of merger (except as provided in subsection (h) of this Code section) or share exchange for approval by its shareholders.

OCGA § 14-2-1103 (a). We see nothing in this Code section or in the cases cited by Magner that forbids a board from correcting typographical errors or making nonmaterial changes to the merger plans prior to their submission to the shareholders for a vote.

The merger plans, as far as we can deduce from the briefs and the record before us, changed in only two respects: (1) A typographical error was corrected; and (2) the direction of the mergers was changed so that the Giotto shell corporations would survive. Under the circumstances of this case, we fail to see (nor has Magner explained) how these changes materially affected the substance of the mergers or Magner's rights. Correcting a typographical error in the price per share did not change the fact that the mergers were intended to cash out the fair value of Magner's ownership interest. Reversing the direction of the mergers resulted only in a change of corporate name. The parties to the merger never changed. The Giotto entities were shell corporations with no assets of their own. Allowing

the shell corporations to survive may have, at the most, resulted in some potential tax benefit to the corporations. Clearly, however, this change did not materially affect Magner since he was never entitled to participate in the surviving corporations. More importantly, however, Magner received notice of all of these changes prior to the shareholders' meeting. Not only has Magner failed to show any illegality, he has failed to show that he was in any way harmed. See 15 Fletcher Cyc. Corp. § 7159 (rescission of merger generally requires a showing of both irreparable injury and inadequate remedy at law).

2. Magner contends he and the LLC properly perfected dissenters' rights and are, therefore, entitled to a judicial appraisal. We disagree.

OCGA § 14-2-1302 (a) provides that a "record shareholder of the corporation is entitled to dissent from, and obtain payment of the fair value of his shares in the event of" certain enumerated events, including the "[c]onsummation of a plan of merger." OCGA § 14-2-1302 (a) (1). The procedure for perfecting dissenters' rights is "extremely technical and must be followed within the time limits provided; otherwise the shareholder risks losing such appraisal rights." Kaplan's Nadler Ga. Corporation Law (2001 ed.), § 12-20.

To perfect these rights following the merger, Magner, as the record shareholder, was required to "demand payment and deposit his certificates in accordance with the terms of the [dissenters'] notice" he was sent. OCGA § 14-2-1323 (a). See also OCGA § 14-2-1301 (4) (a dissenter is a shareholder who exercises his rights in accordance with OCGA §§ 14-2-1320 through 14-2-1327). If Magner failed to do as instructed in the dissenters' notice, the Code states he "is not entitled to payment for his shares under [the dissenters' rights] article." OCGA § 14-2-1323 (c).

Magner did not tender his stock certificates and demand payment as required by the Code. Instead, he cancelled his certificates and had new certificates issued to another legal entity. By this act, Magner placed his certificates beyond his power to tender to the corporation. See *Graves v. Pittsburgh Consolidation Coal Co.*, 355 Pa. 224, 225 (49 A2d 344) (1946). Consequently, Magner gave up his right to dissent, a right which attached to the possession of those particular stock certificates. Id. at 225.

The LLC has no dissenters' rights because it was not a record shareholder on the record date, March 25, 1999. A "record shareholder" is defined in the Code, in relevant part, as "the person in whose name [the] shares are registered in the records of a corporation." OCGA § 14-2-1301 (7). Moreover, a record shareholder, as that term is used in the dissenters' rights provisions, contemplates a shareholder who also held shares on the "record date" for purposes of a particular corporate transaction or event. See OCGA §§ 14-2-707; 14-2-1302; 14-2-1320 through 14-2-1323. For example, OCGA § 14-2-

707 allows the directors to fix a record date so that the corporation may determine, with some degree of certainty, the shareholders entitled to notice, to make demands, to vote, and to take any other action.[7] The commentary to OCGA § 14-2-1323 explains that the record date "is the cut-off date for determining who has dissenters' rights under this article" and "the demand for payment . . . is the definitive statement by the dissenter." In cases like the instant one, the Code contemplates a demand for payment being made by one who previously received notice of the corporate action and properly expressed an intent to dissent prior to the shareholders' vote. See OCGA §§ 14-2-1321; 14-2-1322. As the commentary to OCGA § 14-2-1323 explains, the demand is "confirmation of the 'intention' expressed earlier."

In this case, the LLC was not a record shareholder in either OSC or BPS on the record date set by the corporation. As such, it was not entitled to participate in the event at issue: the mergers. See *Graves*, 355 Pa. at 225. It had no right to dissent and obtain payment for its shares under the dissenters' rights statutes. Id. For these reasons, the trial court properly granted summary judgment in favor of OSC and BPS.

*Judgment affirmed. Smith, P. J., and Eldridge, J., concur.*

DECIDED OCTOBER 29, 2002 —
RECONSIDERATION DENIED NOVEMBER 21, 2002

*Robins, Kaplan, Miller & Ciresi, Thomas J. Gallo, Jennifer A. Adler*, for appellants.

*McKenna, Long & Aldridge, David Balser, Gregory S. Brow*, for appellees.

---

[7] However, as the commentary to OCGA § 14-2-1301 explains, certain actions may create a new record date for determining who is a shareholder. See also OCGA §§ 14-2-704; 14-2-1104; 14-2-1320 (b); the commentary to OCGA § 14-2-1323. None of those actions are implicated by the facts of this case.