A04A0444, A04A0445. EDWARDS et al. v. GRAPEFIELDS, INC. et al.; and vice versa.
(599 SE2d 489)

ADAMS, Judge.

On January 23, 2001, Sara Edwards sued Grapefields, Inc. and Lee Kosby seeking (i) an accounting of the business of Grapefields, (ii) an injunction preventing Grapefields from selling or transferring any of its assets, (iii) Grapefields' dissolution, and (iv) the appointment of a receiver to manage Grapefields' affairs. Brian Chew was added as

---

a plaintiff by amendment to the complaint. Grapefields and Kosby filed a counterclaim against Sara Edwards, Chew, and Philip Edwards, Sara Edwards' husband. Grapefields and Kosby then moved for summary judgment on Sara Edwards' and Chew's claims, and the trial court granted the motion as to Sara Edwards' claims and denied the motion as to Chew's claims. In Case No. A04A0444, Sara Edwards appeals from the trial court's order granting summary judgment to Grapefields and Kosby on her claims against them. In Case No. A04A0445, Grapefields and Kosby appeal from the trial court's order denying their motion for summary judgment as to Chew's claims. For the reasons set forth below, we reverse in Case No. A04A0444 and affirm in Case No. A04A0445.

To prevail on a motion for summary judgment, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in a light most favorable to the party opposing the motion, warrant judgment as a matter of law. OCGA § 9-11-56 (c); *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). A defendant carries this burden by demonstrating the absence of evidence as to one essential element of the plaintiff's case. Should the defendant do so, the plaintiff "cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue." Id. Our review is de novo. *Walker v. Virtual Packaging*, 229 Ga. App. 124 (493 SE2d 551) (1997).

So viewed, the evidence shows that in 1992, Philip Edwards was employed by Tower Package, an alcoholic beverage retailer located in the Atlanta area. While Philip Edwards was employed with Tower Package he was also assisting in the development of Grapefields, an alcoholic beverage wholesaler, in return for what he anticipated would be an equity interest in the business.

Kosby and Bill Wheeler, Grapefields' shareholders at the time, told Philip Edwards "there might be a problem" with issuing him stock in Grapefields. Kosby and Wheeler proposed issuing the Grapefields stock to Sara Edwards instead. Sara Edwards deposed that the shares were issued primarily in compensation for work done by Philip Edwards and, to a lesser extent, by herself. However, Sara Edwards admitted that the Grapefields stock was issued to her and not to Philip Edwards because Philip Edwards' employment by Tower Package prevented him from owning stock in Grapefields.

On March 21, 1994, stock certificate number 3, representing 1,000 shares of Grapefields, was issued in the name of Sara Edwards. Shortly thereafter, Sara Edwards was elected as a vice-president and director of the corporation. On February 3, 1995, stock certificate number 5, representing 150 shares of Grapefields, was issued to Brian Chew.

Philip Edwards, Sara Edwards, and Chew tried to take control of Grapefields in early 1995 by acquiring the shares of Kosby and Wheeler, but were unsuccessful. On March 9, 1995, Sara Edwards resigned as an officer and director of Grapefields. Thereafter, Sara Edwards did not attend or receive any notice of Grapefields shareholders' meetings.

According to the complaint, Sara Edwards brought the underlying action after she learned that Grapefields was planning to sell its largest asset, a distributorship for Rabbit Ridge wine. The sale of the distributorship became a moot issue when Rabbit Ridge withdrew its brand from distribution in Georgia, but Sara Edwards' and Chew's claims for an accounting, dissolution, and an appointment of a receiver remain.

### Case No. A04A0444

1. The trial court concluded that

the Department of Revenue [the "Department"] regulations were violated, as (1) Philip Edwards, an employee of a retail dealer, indirectly held an ownership interest and accepted the benefits of such an interest in Grapefields, a wholesaler, and (2) Sara Edwards acted on Philip Edwards' behalf in this regard in an attempt to circumvent the regulations.

The trial court also held that the issuance of Grapefields stock to Sara Edwards was accomplished through a void shareholder contract because the purpose of the contract was to violate Department regulations, and that public policy also voided Sara Edwards' interest in Grapefields. Because the trial court found that Sara Edwards could not show an ownership interest in Grapefields, her underlying claims necessarily failed. We agree with Sara Edwards that the trial court erred in finding that violations of Department regulations and public policy voided her shareholder interest, if any, in Grapefields.

Applicable Department regulations provide:

Neither a retail dealer or retail consumption dealer, whether licensed in this State or not, nor any of his employees or members of such retail dealer's or retail consumption dealer's immediate family shall have, own or enjoy any ownership interest in, or partnership arrangement or other business association with the business of any wholesaler, manufacturer, producer, shipper, importer or broker.

Ga. Comp. R. & Regs. r. 560-2-2-.38 (3).

> Any act which may be construed as a subterfuge in an effort to circumvent any of these Rules and Regulations shall be deemed a violation of the rule or regulation attempted to be circumvented.

Ga. Comp. R. & Regs. r. 560-2-2-.14.

Rule 560-2-2-.38 (3) does not expressly forbid Sara Edwards from owning stock in Grapefields because its prohibitions do not extend to the immediate family of the employees of retail dealers. The trial court nevertheless concluded that the principals of Grapefields decided to issue stock to Sara Edwards in an attempt to circumvent the regulations. As the trial court stated:

> All the parties agree that the stock was to be issued mainly for the work of Philip Edwards, not Sara Edwards, but because of the Department of Revenue Regulations, the stock would be issued in Sara Edwards' name.

The trial court further noted that Philip Edwards was happy with the arrangement because he felt that anything that benefitted his wife would also benefit him, and that after the issuance of shares to Sara Edwards and her appointment as an officer and director, Philip Edwards often attended directors' and shareholders' meetings as Sara Edwards' proxy, and made decisions concerning Grapefields' business.

We agree with the trial court that the parties acted with intent to circumvent Department regulations, especially in view of Sara Edwards' admission that the shares were issued to her instead of Philip Edwards because Philip Edwards "as an employee of Tower couldn't own stock." We disagree, however, that the agreement to issue shares to Sara Edwards was an illegal or immoral contract. "Georgia courts will not enforce illegal or immoral contracts because so doing would implicate the judiciary by facilitating the illegality or immorality." *Brandon v. Newman*, 243 Ga. App. 183, 187 (3) (532 SE2d 743) (2000). "A contract to do an immoral or illegal thing is void." OCGA § 13-8-1.

Shares are issued in a contract between the subscriber and the corporation. See *C & S Land &c. Corp. v. Yarbrough*, 153 Ga. App. 644, 650 (3) (266 SE2d 508) (1980); OCGA § 14-2-621. The direct object of the agreement to issue shares to Sara Edwards is not shown to violate any law. Even if the ultimate object of the contract was the circumvention of Rule 560-2-2-.38 (3), and therefore a violation of Rule 560-2-2-.14, we have previously ruled that although a contract may violate an administrative rule or regulation of the Department, the contract is not necessarily illegal.

The act of 1938 provides that the State Revenue Commissioner shall have the power to promulgate such rules and regulations as he may deem necessary to control the sale, etc., of distilled spirits and alcohol in accordance with the provisions of that act; and it appears that what is alleged to be the "State Revenue Law" is a regulation promulgated by the Revenue Commissioner. The violation of such an administrative rule of the Revenue Commissioner may result in suspension or cancellation of the license of the offending party or parties, but such rules do not make illegal an act or contract not also prohibited by statute.

*Gaddy v. Silverman*, 86 Ga. App. 239, 243 (71 SE2d 277) (1952).

We conclude that *Gaddy* remains controlling and that the agreement to issue stock to Sara Edwards is not illegal unless it is also prohibited by statute. In an effort to show a statutory violation, Kosby and Grapefields refer us to Chapter 3 of the Georgia Alcoholic Beverage Code (the "Act"). OCGA §§ 3-3-9 and 3-3-27 (c) (2) provide that it is a misdemeanor to violate a prohibition or provision of the Act; however, these provisions do not make it a criminal act to violate a Department of Revenue regulation. See *Glustrom v. State*, 206 Ga. 734, 740 (58 SE2d 534) (1950) (accusation did not charge a crime because the alleged violation of Department regulations was not made the subject matter of any legislative enactment). Grapefields and Kosby do not point to any provision of the Act or other statute that would prohibit the issuance of shares to Sara Edwards.

Recognizing that the agreement to issue stock to Sara Edwards may not be illegal, the trial court also considered whether the agreement violated public policy. OCGA § 13-8-2 provides, in pertinent part, that "[a] contract which is against the policy of the law cannot be enforced." OCGA § 13-8-2 includes a nonexclusive list of contracts that are against public policy, and the contract at issue is not specifically prohibited. We are not restricted by this list in voiding contracts that are against public policy; however,

[t]he power of the courts to declare a contract void for being in contravention of a sound public policy is a very delicate and undefined power, and, like the power to declare a statute unconstitutional, should be exercised only in cases free from doubt. The authority of the lawmaking power to interfere with the private right of contract has its limits, and the courts should be extremely cautious in exercising the power to supervise private contracts which the lawmaking power has not declared unlawful.

(Citation omitted.) *Porubiansky v. Emory University*, 156 Ga. App. 602, 604 (275 SE2d 163) (1980). The trial court held that state policy "disapproves of the indirect ownership in a wholesaler by a retail employee." The trial court further ruled "that this public policy voids Sara Edwards' ownership interest in Grapefields, if any."

We disagree with the trial court because the alleged violation of public policy in this case is not "free from doubt." See *Porubiansky*, supra. "The public policy of this state is created by our Constitution, laws and judicial decisions." *Horace Mann Ins. Co. v. Drury*, 213 Ga. App. 321, 323 (2) (445 SE2d 272) (1994).

> A contract cannot be said to be contrary to public policy unless the General Assembly has declared it to be so, or unless the consideration of the contract is contrary to good morals and contrary to law, or unless the contract is entered into for the purpose of effecting an illegal or immoral agreement or doing something which is in violation of law.

(Citation and punctuation omitted.) *Piedmont Arbors Condo. Assn. v. BPI Constr. Co.*, 197 Ga. App. 141 (397 SE2d 611) (1990).

We have identified four factors which weigh against finding Sara Edwards' interest in Grapefields to be void as against public policy. First, there is no strongly established prohibition against what the trial court characterized as "indirect ownership" of a wholesaler by a retail employee. Such a prohibition can arguably be inferred by reading Rule 560-2-2-.38 (3), which prohibits direct ownership of a wholesaler by a retail employee, in conjunction with Rule 560-2-2-.14, which forbids subterfuge to circumvent the rules and regulations of the Department.

Retailers and wholesalers have separate functions under the Act. OCGA §§ 3-1-2 (19); 3-1-2 (24); 3-6-23. Establishing a clear line of separation between the ownership of retailers and wholesalers, as contemplated by Rule 560-2-2-.38 (3), appears to be consistent with the purpose of the Act. Nevertheless, the regulations are not shown to be derived from any statute, constitutional provision, or judicial decision apart from the Department's mandate under the Act to make rules and regulations "for the enforcement of this title and the collection of revenues under this title." OCGA § 3-2-2 (a).

While a regulation may have the force of law, *Atkins v. Manning*, 206 Ga. 219, 221 (56 SE2d 260) (1949), a regulation is not a statute, *Georgia Oilmen's Assn. v. Ga. Dept. of Revenue*, 261 Ga. App. 393, 396 (1) (582 SE2d 549) (2003) (a Department regulation is not a new law but merely an administrative rule authorized by and consistent with a duly passed statute), and may be limited to its regulatory purpose. *Johnson Realty v. Hand*, 189 Ga. App. 706, 709-710 (3) (377 SE2d 176)

(1988) (while regulations of real estate commissioner had force and effect of a statute with respect to licensing, they did not have force and effect of a statute in area of civil liability). Accordingly, voiding a contract based on a public policy shown only through an interpretation of Department regulations is not consistent with the requirement that public policy will only prevent enforcement of contracts in cases that are "free from doubt."

Second, Philip Edwards' "indirect interest" in Grapefields was not created through the issuance of shares to Sara Edwards.

> For a contract to be illegal . . . the purpose or object of the contract must be illegal. However, this rule has been held inapplicable where the object of the contract is not illegal or against public policy, but where the illegality is only collateral or remotely connected to the contract.

(Citation omitted.) *Shannondoah, Inc. v. Smith*, 140 Ga. App. 200, 202 (230 SE2d 351) (1976). Issuing shares to Sara Edwards did not violate any regulation per se, and Philip Edwards' "indirect ownership" is shown by collateral understandings between Sara Edwards and Philip Edwards, and between Philip Edwards and the actual shareholders. It could be argued that the underlying purpose of issuing shares to Sara Edwards was the circumvention of Department regulations and that the violation of public policy was not remote to that transaction. Nevertheless, the agreement to issue stock to Sara Edwards contrasts with the contracts considered in the cases relied on by Grapefields and Kosby, which were on their face contrary to the law. See *City of Atlanta v. Henry Grady Hotel Corp.*, 220 Ga. 249 (138 SE2d 362) (1964); *Smith v. Nix*, 206 Ga. 403 (57 SE2d 275) (1950); *Jones v. Clark*, 147 Ga. App. 657 (249 SE2d 619) (1978).

Third, as we noted in *Gaddy*, the Department of Revenue has its own means of enforcing violations of its regulations.

> Any person holding any license, permit, or registration issued pursuant to the Act or any employee or agent of such person who violates any provision of the Act or Regulations, or directs, consents to, permits, or acquiesces in such violation, either directly or indirectly shall, by such conduct, subject the license to suspension or revocation.

Ga. Comp. R. & Regs. r. 560-2-2-.28 (1). A distinction can be made between revoking a license to engage in the liquor business, as contemplated by the regulations, and depriving someone of an otherwise legal property right. The latter action would arguably "extend

the penalty beyond that prescribed by law." *Phenix Ins. Co. v. Clay*, 101 Ga. 331, 335 (28 SE 853) (1897). In addition, voiding Sara Edwards' shareholder rights gives control of Grapefields to Kosby without consideration of the underlying merits of her case.[1] Kosby approved the issuance of shares to Sara Edwards and may be equally culpable for any resulting regulatory violation.

Fourth, Sara Edwards' cause of action does not relate to the alleged regulatory violations. "An obligation supported by an independent consideration will be enforced, though indirectly connected with an illegal transaction, where the plaintiff does not require the aid of the illegal transaction to make out [her] case." *Mechanics Realty &c. Co. v. Leva*, 16 Ga. App. 7 (2) (84 SE 222) (1915). For the foregoing reasons, we find that the trial court erred in voiding Sara Edwards' interest, if any, in Grapefields.

## *Case No. A04A0445*

2. In the cross-appeal, Grapefields and Kosby appeal the trial court's denial of their motion for summary judgment with respect to Chew's claims. The trial court concluded that material issues of fact remain with regard to the status of Chew's shares, and we agree.

As an initial matter, we note that Chew deposed that he had been working for Grapefields, was presented with another job prospect, and the shares were issued to "get me to stay" with Grapefields. This is evidence that Chew's shares were issued in return for a promise of his continued employment, which would constitute valid consideration under OCGA § 14-2-621 (b). See *Mon Ami Intl. v. Gale*, 264 Ga. App. 739 (592 SE2d 83) (2003).

Grapefields and Kosby's central argument is (i) because Chew's name does not appear in the shareholder records of Grapefields, he is not a shareholder as defined in the Georgia Business Corporation Code, OCGA § 14-2-140 (25), and (ii) while Chew might have had a cause of action to have his interest properly recorded, he failed to do so within the applicable statute of limitation. We disagree with this argument because there is evidence that Chew is a shareholder of Grapefields.

The share transfer ledger shows that certificate number 5 was issued as an original issue, and there is no indication that these shares were further transferred. The shares are noted as "void" and the name of the original shareholder is left blank. However, the

---

[1] The stock transfer register shows that Wheeler's shares have been redeemed.

evidence is undisputed that certificate number 5 was issued to Chew. The certificate represents that Chew is the registered holder of the shares.

"Shareholder" is defined as a "person in whose name shares are registered in the records of a corporation or the beneficial owner of shares to the extent of the rights granted by a nominee certificate on file with a corporation." OCGA § 14-2-140 (25). The "records" of a corporation are not restricted to any particular form; however, a corporation "shall maintain" records that permit the preparation of a list of the names and addresses of its shareholders in alphabetical order by class of shares showing the number and class of shares held by each shareholder. OCGA § 14-2-1601. In view of evidence showing that Chew was a shareholder of Grapefields and of Grapefields' obligation to keep a record of shareholders, Grapefields' failure to add Chew's name to its stock register does not demand a finding, for purposes of summary judgment, that Chew was not a shareholder.

Grapefields and Kosby also rely on *Magner v. One Securities Corp.*, 258 Ga. App. 520 (574 SE2d 555) (2002). *Magner* involved, among other things, a claim by Magner Family, LLC to exercise dissenters' rights in two corporations. We concluded that the LLC was not a record shareholder on the record date for the exercise of dissenters' rights. Grapefields and Kosby draw a comparison between the LLC and Chew, noting that the LLC held stock certificates in the corporations but was not considered a record shareholder on the pertinent date. Any comparison between Chew and the LLC breaks down in view of the facts of *Magner*, which show that the shares were transferred to the LLC after the applicable record date for exercising dissenters' rights. Unlike the LLC's claims, Chew's claims do not require that he be considered a shareholder before he received his stock certificate. We conclude that the trial court did not err in denying Grapefields and Kosby's motion for summary judgment on Chew's claims.

*Judgment reversed in Case No. A04A0444. Judgment affirmed in Case No. A04A0445. Ruffin, P. J., and Eldridge, J., concur.*

DECIDED APRIL 14, 2004 —
RECONSIDERATION DENIED MAY 14, 2004 — 

*McCurdy & Stone, John D. Stone*, for appellants.

*Chorey, Taylor & Feil, John L. Taylor, Otto F. Feil III*, for appellees.