A04A1415, A04A1416. HIERS v. CHOICEPOINT SERVICES,
INC.; and vice versa.
(606 SE2d 29)

ANDREWS, Presiding Judge.

Ludwick Hiers appeals from the trial court's order granting ChoicePoint Services, Inc.'s motion for summary judgment on Hiers's suit for money owed under an employment contract. For reasons which follow, we conclude there was some evidence that the employment contract was valid and enforceable and ChoicePoint was not entitled to summary judgment on this issue. But, because the time period for payment of future commissions under the employment contract is too indefinite to be enforced, ChoicePoint was entitled to summary judgment on Hiers's claim for commissions which were not otherwise billable during the period of his employment.

This case arose when Hiers sued ChoicePoint claiming that it failed to pay him commissions he had earned for selling ChoicePoint's employment verification services. ChoicePoint filed a motion for summary judgment and Hiers filed a motion for partial summary judgment. After a lengthy hearing, the trial court denied Hiers's motion and granted summary judgment on all claims to ChoicePoint. Hiers now appeals only the grant of summary judgment to Choice-Point on his breach of contract claim.

When reviewing the grant of a motion for summary judgment, this Court conducts a de novo review of the law and the evidence. *Pickren v. Pickren*, 265 Ga. App. 195 (593 SE2d 387) (2004). To prevail at summary judgment under OCGA § 9-11-56 (c), the moving party must show that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmovant, warrant judgment as a matter of law. *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

So viewed, the evidence was that Hiers began working in November 1995, as an independent contractor for Advanced HR Solutions which later became a wholly-owned subsidiary of ChoicePoint. Hiers sold Advanced HR's employment verification processes to human resource divisions of various companies. Hiers's initial compensation was $1 per call to the system by clients he had recruited.

In January 1998, Hiers went to Tony Hungerford, who at the time was vice-president of Employment Services at ChoicePoint, and told him that he was paid only $18,000 in the previous two years and was considering bankruptcy. Hiers proposed that ChoicePoint pay him a consulting fee for training ChoicePoint personnel to sell the employment verification services. Hungerford agreed to pay him $5,000 per month for the consulting service (January 30 contract). But, this consulting agreement did not address commissions that Hiers had already been receiving for selling ChoicePoint's services.

After signing the January 30 agreement, Hiers became concerned about his commission payments and called David Berner, the president of Advanced HR, and pointed out the omission. Berner, with the approval of Hungerford, then sent an agreement letter to Hiers listing the commission schedule in addition to the $5,000 per month under the consulting agreement (February 2 contract).

In May 1999, ChoicePoint sold Advanced HR to Sheakley Uni-Service. Sheakley did not accept Hiers's contract as part of the acquisition and declined to pay Hiers for commissions earned on his accounts. ChoicePoint also refused to pay any further commissions after April 1999, because it was no longer operating this employment verification service. Hiers then filed the instant suit against Choice-Point for commissions earned under the February 2 contract.

ChoicePoint claimed it was entitled to summary judgment on Hiers's breach of contract claim because (1) Berner had no authority to enter into the February 2 contract; (2) the February 2 contract was invalid because it lacked consideration; and (3) the contract's terms were too indefinite to be enforced. The trial court's order does not state a specific basis for the grant of summary judgment to Choice-Point, holding only that the motion "is granted in its entirety."

1. The cardinal rule of contract construction is to ascertain the intent of the parties at the time they entered the agreement. *Northen v. Tobin*, 262 Ga. App. 339 (585 SE2d 681) (2003). Construed most favorably to Hiers as nonmovant, there was evidence that the February 2 contract was written to make clear that ChoicePoint did not intend to do away with the commission agreement already in place when it began paying Hiers the $5,000 a month consulting fee. Moreover, the actions of the parties showed that they intended to be bound by the February 2 agreement. ChoicePoint continued to pay Hiers both his $5,000 a month consulting fee and his commissions. "The construction placed upon a contract by the parties thereto, as shown by their acts and conduct, is entitled to much weight and may be conclusive upon them." (Punctuation omitted.) *Toncee, Inc. v. Thomas*, 219 Ga. App. 539, 541 (466 SE2d 27) (1995), citing *Scruggs v. Purvis*, 218 Ga. 40, 42 (126 SE2d 208) (1962).

Further, we cannot say as a matter of law that the contract lacked consideration. If Hiers was an at-will employee,[1] his continued employment constitutes valid consideration for the commissions that ChoicePoint promised to pay in the February 2 contract. *Mon Ami Intl. v. Gale*, 264 Ga. App. 739, 742 (592 SE2d 83) (2003). See also

---

[1] There was no period of time given in the February 2 contract and a contract of employment for an indefinite term is terminable at the will of either party. See OCGA § 34-7-1. ChoicePoint also argued below that the contract was terminable at will.

*Edwards v. Grapefields, Inc.*, 267 Ga. App. 399, 406 (599 SE2d 489) (2004) (promise to continue in his employment was valid consideration); *Southern Sav. Bank v. Dickey*, 58 Ga. App. 718, 723 (199 SE 546) (1938), citing *Davis & Co. v. Morgan*, 117 Ga. 504, 505 (43 SE 732) (1903) (where an employment contract is terminable at will, no additional consideration is necessary). We also note that in *Landmark Financial Svcs. v. Tarpley*, 236 Ga. 568 (224 SE2d 736) (1976), the court ignored the distinction between an at-will employee and an employee for a definite term and held that where "the contract provides for duties to be performed by the employee and definite compensation to be paid by the employer[, this] is adequate consideration by both parties and sufficient to sustain the mutuality of the contract." Id. at 571.

There was also evidence that Berner was authorized to sign the contract. For example, Hungerford, who did have authority to enter into the contract, stated in his deposition that he authorized Berner to add the commission terms to the agreement.

2. ChoicePoint also argued that the contract was unenforceable as a contract of indefinite duration. It claimed that the obligation to pay commissions is not triggered until the account "goes live," meaning the customer has loaded its employment verification data into ChoicePoint's system. And, customers are not required to go live by a certain date, if ever.

The agreement provided as follows:

> This compensation will be for the "Term of the Agreement" or a minimum of three (3) years, whichever is the greater. This payment timeframe will begin the month following the month the entire [customer's] company's employee population has been loaded onto our database servers and the entire [customer] is determined to be "live" with the employment verification service.

In construing this provision, we note that an employee is entitled to commissions earned while he was employed and which were due and billable during his term of employment. See *McKissick v. Roth Communications &c.*, 203 Ga. App. 747, 749 (417 SE2d 696) (1992) (former employee entitled to commissions on sale orders which were billable during period of employment but was not entitled to commissions which were not otherwise billable by company during employee's tenure of employment). But, he is not entitled to commissions based on events that may or may not occur sometime in the future. See *Cook v. Barfield*, 224 Ga. 355, 356 (162 SE2d 417) (1968) (petition failed to set forth a cause of action for real estate commission because it was too indefinite with respect to time within which balance of

purchase price was to be paid); *Vulcan Materials Co. v. Douglas*, 131 Ga. App. 21 (205 SE2d 84) (1974) (commission agreement unenforceable even though purchase order accepted by defendant prior to employee's termination, because obligation to buy was contingent on performance of other acts which were within the sole discretion of the buyer).

In this case, the time when some of the commissions come due, if they come due, is some indefinite time in the future. And, whether the commissions come due at all is determined by events which may or may not occur and which are within the sole discretion of the buyer.

Therefore, ChoicePoint was entitled to summary judgment on Hiers's breach of contract claim to the extent Hiers contended he was entitled to future commissions that had yet to be determined. Hiers has, however, raised issues of fact as to whether the employment contract was otherwise valid and enforceable. Accordingly, the judgment of the trial court in Case No. A04A1415 is affirmed in part and reversed in part.

## *Case No. A04A1416*

In Case No. A04A1416, ChoicePoint cross-appeals from the trial court's order denying its motion to dismiss Hiers's appeal for failing to timely file the record in this Court. The record shows that Hiers filed a timely notice of appeal on October 26, 2001. A notice of costs was sent to Hiers's counsel on February 19, 2002. On February 26, 2002, Hiers filed a pauper's affidavit in this Court stating that he was unable to pay the $80 filing fee. Hiers also hand delivered a courtesy copy of this affidavit to the trial court. On April 10, 2002, he filed a motion in the trial court to accept the pauper's affidavit. Hiers also filed an amended pauper's affidavit in the trial court on May 31, 2001.

OCGA § 5-6-48 (c) provides in pertinent part:

No appeal shall be dismissed by the appellate court nor consideration of any error therein refused because of failure of any party to cause the transcript of evidence and proceedings to be filed within the time allowed by law or order of court; but the trial court may, after notice and opportunity for hearing, order that the appeal be dismissed where there has been an unreasonable delay in the filing of the transcript and it is shown that the delay was inexcusable and was caused by such party. In like manner, the trial court may order the appeal dismissed where there has been an unreasonable delay in the transmission of the record to the appellate court, and it is seen that the delay was inexcusable and was caused by the failure of a party to pay costs in the trial court or file an affidavit of indigence. . . .

Also, we note that "[t]rial courts have very broad discretion when deciding whether to dismiss an appeal for delay." (Citation, punctuation and footnote omitted.) *Russell Morgan Landscape Mgmt. v. Velez-Ochoa*, 252 Ga. App. 549, 550 (556 SE2d 827) (2001).

In this case, the trial court found that the delay in paying costs was excusable considering the pendency of the motion to accept the pauper's affidavit. Because ChoicePoint has not shown any prejudice resulting from the delay and given that the trial court has broad discretion in this area, we affirm.

*Judgment affirmed in part and reversed in part in Case No. A04A1415. Judgment affirmed in Case No. A04A1416. Miller and Ellington, JJ., concur.*

DECIDED OCTOBER 4, 2004 —
RECONSIDERATION DENIED OCTOBER 20, 2004 — 

*Wiezenecker, Rose, Mottern & Fisher, Gordon J. Rose, Robert J. Mottern, Roxana F. Dehnad, Ann T. Shafer*, for appellant.

*Elarbee, Thompson, Sapp & Wilson, Richard R. Gignilliat, William D. Deveney*, for appellee.

