### A09A0917. IRVIN INTERNATIONAL, INC. v. RIVERWOOD INTERNATIONAL CORPORATION et al.
(683 SE2d 158)

MIKELL, Judge.

Irvin International, Inc. (''Irvin''), filed a breach of contract and fraud action in 2003 against Riverwood International Corporation (''Riverwood''), Riverwood International Machinery, Inc. (''RIMI''), and G. Phillips Jones, Riverwood's vice-president and general manager, seeking to recover commissions on sales of paperboard beverage cartons to bottling companies. Riverwood manufactured the paperboard cartons, and the bottling companies used packaging equipment leased from RIMI to convert the flat paperboard cartons into containers and fill them with soft drinks and bottled water. Pursuant to a contract that expired in 2002 (the ''Agreement''), Irvin placed packaging equipment in customers' bottling facilities, sold Riverwood's paperboard cartons to the bottlers, and was paid a commission on the sales of paperboard cartons. Although the parties' contract expired, Irvin claims that it is entitled to continuing commissions on carton sales for the duration of the equipment leases because Irvin was responsible for renewing the leases while the Agreement was in effect. Irvin appeals from the trial court's grant of summary judgment to the defendants,[1] and we affirm for the reasons set forth below.

When reviewing the grant of a motion for summary judgment, this Court conducts a de novo review of the law and the evidence.[2] To

---

[1] The defendants filed a motion for summary judgment in 2004. The case was transferred to the Business Case Division of the Fulton County Superior Court in 2007. A hearing was held on the motion on March 27, 2008, and it was granted on April 7, 2008.

[2] *Hiers v. ChoicePoint Svcs.*, 270 Ga. App. 128 (606 SE2d 29) (2004) (summary judgment

prevail at summary judgment under OCGA § 9-11-56 (c), the moving party must show that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmovant, warrant judgment as a matter of law.[3]

So viewed, the record shows that Irvin is an independent sales and service representative. In 1989, Irvin entered into its first contract with Riverwood's predecessor in interest to sell to, and service, soft drink bottlers who purchased Riverwood's paperboard cartons. The contract provided for a complex tiered commission schedule based on paperboard sales, customer service, and territory. It expired at the end of 1992, and the parties entered into another contract in 1993.[4] This contract contained the same complex tiered commission schedule but added a clause authorizing Irvin to solicit orders for the sale or lease of packaging machinery. The clause stated that Irvin would be paid a certain sum of money according to the type of machine placed with the customer. Irvin was not paid a separate commission on the sale or lease of equipment. The contract expired on January 31, 1996.

The parties operated without a written contract from February 1, 1996, until December 31, 1999. During this time, Irvin continued to sell Riverwood's products and service its accounts and was paid commissions under the same terms that were in effect under the 1993 contract.

Irvin and Riverwood entered into the Agreement which forms the basis of this dispute on January 1, 2000. Pursuant to the Agreement, Irvin was

> a non-exclusive commission sales and service representative for Riverwood's Packaging Division. As such . . . Irvin shall promote the sale and use of, and obtain invitations for offers to purchase Riverwood's paperboard soft drink and water bottle carriers . . . with responsibility for sale to those customers listed [herein].

The Agreement provided that Irvin would be paid a flat "sales and service" commission of two and one-fourth percent (reduced from three percent commission for the same service provided under previous contracts) of "the amount of all invoices, less freight, rendered by Riverwood pursuant to orders generated by Irvin." Not only did the new Agreement simplify the commission structure and

---

against employee on his breach of contract claim affirmed to the extent he sought future sales commissions).

[3] *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

[4] There were two contracts executed in 1993, but one was effective for only one month.

reduce the rate, it also eliminated the bonus payments for placing machines with customers. The Agreement authorized Irvin to solicit orders for the sale or lease of packaging machinery but expressly stated that "[n]o additional compensation shall be paid for the sale or lease of machines." The Agreement "automatically terminate[d]" on December 31, 2002.

Shortly before the Agreement expired, Irvin wrote Jones a letter stating that Irvin had been responsible for procuring the leases and providing customer support; that in addition to the Agreement, there had been a course of dealing between the parties concerning Irvin's compensation for securing the leases; and that the course of dealing included the sales commission "tied to sales of carton blanks to the customers over the life of the leases" that Irvin procured for Riverwood. The letter reflected that Irvin did not "recognize that the contractual responsibilities of either party terminate with respect to the existing leases that Irvin has obtained for Riverwood over the last three years, and for which Irvin has only been partially compensated or not compensated at all." According to the letter, Riverwood had offered Irvin a new contract with "a limited number of customers and much lower revenue prospects." In response, Jones wrote Irvin that Riverwood would treat the Agreement as terminated on December 31, 2002; that all customers had been instructed to issue all orders directly to Riverwood as of January 1, 2003; and that Jones regretted Irvin's decision not to accept Riverwood's proposal of a smaller customer base.

Irvin filed suit on February 10, 2003. In the complaint, Irvin claimed that the commissions were partly based on the value of the equipment leases it procured for Riverwood and that it was entitled to commissions on projected packaging sales for the life of the leases, totaling nearly five million dollars. Irvin asserted claims of breach of contract and fraud; requested that the defendants be equitably estopped from converting commissions that were due to Irvin; and sought to recover actual damages, punitive damages, attorney fees, and costs of litigation. On appeal, Irvin challenges the trial court's grant of summary judgment to the defendants on the following issues: (1) prior course of dealing and irrevocable agency, (2) fraud in the inducement, (3) equitable estoppel, and (4) punitive damages, attorney fees, and costs of litigation.

1. Irvin contends that the trial court erred in granting summary judgment on its breach of contract claim for failure to pay continuing commissions based upon compensation for equipment leases because (a) there is evidence of the parties' course of dealing and (b) Irvin's agency was irrevocable.

(a) Irvin argues that Riverwood's payment of continuing commissions in 1995 based on revenues from the sales of paperboard

cartons evidences a course of dealing between the parties that raises a jury question on whether Irvin is entitled to such commissions following the expiration of the current Agreement. We disagree.

"A course of dealing is a sequence of previous conduct between the parties to a particular transaction which is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct."[5] In this regard, Tom Irvin ("Mr. Irvin"), Irvin's president, deposed that the issue of continuing commissions arose once, in 1995. Correspondence between the parties reveals that Riverwood notified Mr. Irvin that it would cease commission payments for two Pepsi accounts because Pepsi had asked Riverwood to handle those accounts directly. When Mr. Irvin protested, Riverwood agreed to pay a portion of the commission to settle the dispute.

Contrary to Irvin's argument, this evidence is insufficient to establish a "course of dealing." A single transaction that occurred seven years before the events that form the basis of Irvin's complaint is not evidence of a "sequence of previous conduct" which can "fairly . . . be regarded as establishing a common basis of understanding for interpreting [the parties'] expressions."[6] This incident was simply a one-time negotiated settlement. Therefore, this argument fails.

Within this enumerated error, Irvin raises the additional argument that the clause in the Agreement stating that "[n]o additional compensation shall be paid for the sale or lease of machines" is ambiguous. Irvin argues that "the inclusion of variable use fees in the prices charged by [Riverwood] for sales of paperboard blanks to customers" was intended to compensate Irvin for securing the machine leases. The equipment leases to which Irvin refers state that "Lessee [Consolidated Coca-Cola Bottling Company] shall pay to Lessor a variable lease use fee equal to ten percent (10%) of the net purchase price . . . of all carton blanks used on the Leased Equipment."

"Unless a contract is ambiguous, and the ambiguity cannot be resolved by application of the rules of construction, contract construction is a matter for the court. Ambiguity in a contract may be defined as duplicity, indistinctness, [or] an uncertainty of meaning or expression."[7] The "variable lease use fees" in the equipment leases

---

[5] OCGA § 11-1-205 (1).

[6] See *Unique Designs v. Pittard Machinery Co.*, 200 Ga. App. 647, 653 (3) (409 SE2d 241) (1991) (holding that the sale of a single lathe two years before transaction at issue in the case could not be construed as a "sequence of previous conduct" under OCGA § 11-1-205 (1)).

[7] (Punctuation and footnotes omitted.) *Oglethorpe Power Corp. v. Hartwell Energy Ltd. Partnership*, 244 Ga. App. 859, 863 (537 SE2d 372) (2000).

between Riverwood and Coca-Cola did not render the Agreement between Irvin and Riverwood ambiguous. Mr. Irvin deposed that the 2.25 percent commission formula in the Agreement applied to orders and invoices for packaging systems. During his deposition, Irvin's representative, Paul Joseph Daniels, explained that "first you have to have a signed lease and a machine in place at a customer's location in order to . . . get a carton sale." Daniels testified that the Agreement eliminated the bonus payments given under earlier contracts with Irvin for placing machines with customers. According to Daniels, although Irvin was not compensated separately for placing a machine, Irvin was paid a commission as "part of the net sales of" paperboard cartons run through the machines. "The parties' interpretation [of an agreement] is entitled to great, if not controlling, influence, and will generally be adopted and followed by the courts, particularly . . . when the construction of one party is against his interest."[8] It is clear from the depositions and the Agreement that Irvin was not entitled to commissions based on leased equipment but only for sales of paperboard cartons processed through the equipment. There is no evidence that, prior to the expiration of the Agreement, Irvin procured sales of paperboard cartons for which it was not paid a commission.[9] Accordingly, this argument fails.

(b) Irvin contends that its agency relationship with Riverwood was irrevocable because it was "coupled with an interest" within the meaning of OCGA § 10-6-33. That Code section states, in pertinent part:

Generally, an agency is revocable at the will of the principal. . . . If, however, the power is coupled with an interest in the agent himself, it is not revocable at will. In all cases the agent may recover from the principal, for an unreasonable revocation, any damages he may have suffered by reason thereof.

It is well established, however, that "agencies to sell goods or other property for commissions or other compensation . . . give no interest in the goods or property constituting the subject-matter, and there-

---

[8] (Citations and punctuation omitted.) *Anderson v. Anderson*, 274 Ga. 224, 226 (2) (552 SE2d 801) (2001).

[9] See, e.g., *Hiers*, supra at 130-131 (2) (summary judgment granted to employer on former employee's breach of contract claim to the extent he sought future sales commissions; an employee cannot recover commissions that were not billable until after his termination); *Vulcan Materials Co. v. Douglas*, 131 Ga. App. 21, 22 (2) (205 SE2d 84) (1974) (employee not entitled to commission that was contingent on future events).

fore [are] mere naked, revocable agencies."[10] Following this principle, we have held, for example, that

> [i]n the absence of some contractual provision to the contrary, an agency for a petroleum corporation to distribute its products in a certain territory for commissions would not be irrevocable as a power coupled with an interest merely because the agent expends time, efforts, and money to increase the business of the agency.[11]

The same principle applies in the instant case. The fact that Irvin may have spent time and money to solicit packaging equipment customers for Riverwood did not make Irvin an irrevocable agent because it had no interest in the leases themselves. Only RIMI/Riverwood and certain bottling companies were signatories to leases. The Agreement between Riverwood and Irvin expressly stated that no "additional compensation" would be paid for equipment leases.[12] It follows that Irvin cannot recover continuing commissions after the Agreement expired based on the theory of irrevocable agency.

2. Irvin asserts that the trial court erred in granting summary judgment on its fraud claim. The basis of Irvin's fraud claim is not entirely clear. The amended complaint states that Riverwood falsely represented to Irvin that their contractual relationship would continue. This assertion, even if there is evidence to support it, cannot serve as the basis for a fraud claim. "In the absence of a special relationship or confidence between parties, a matter equally open to the observation of all parties, *such as the terms of a written contract*, will generally not support a claim of fraud."[13] The Agreement specified an automatic termination date of December 31, 2002. Thus, any alleged oral representation that the contractual relationship would continue after that date is not actionable as fraud.

A fraud claim based on oral misrepresentations is also barred by

---

[10] *Wheeler v. Pan-American Petroleum Corp.*, 48 Ga. App. 378, 379 (172 SE 826) (1934). See *Willingham v. Rushing*, 105 Ga. 72, 76 (31 SE 130) (1898) (in order for a power to sell to be "coupled with an interest, . . . the interest must be in the thing itself, and not merely an interest in the proceeds of the sale").

[11] (Citations omitted.) *Wheeler*, supra at 378; accord *Loy's Office Supplies v. Steelcase, Inc.*, 174 Ga. App. 701-702 (331 SE2d 75) (1985).

[12] Compare *Adair v. Smith*, 23 Ga. App. 290, 291 (4) (98 SE 224) (1919) (agent had interest in real estate rental contract that specified agent's commission).

[13] (Punctuation omitted; emphasis supplied.) *Mallen v. Mallen*, 280 Ga. 43, 45 (1) (a) (622 SE2d 812) (2005), citing *Equifax v. 1600 Peachtree*, 268 Ga. App. 186, 195-196 (601 SE2d 519) (2004).

the Agreement's standard merger clause.[14]

> In written contracts containing a merger clause, prior or contemporaneous representations that contradict the written contract cannot be used to vary the terms of a valid written agreement purporting to contain the entire agreement of the parties, nor would the violation of any such alleged oral agreement amount to actionable fraud.[15]

Irvin further asserts that its fraud claim arises from an internal review of soft drink brokers conducted by Riverwood in 1999. The review concluded that Irvin did "a very good job managing their customer base, but they are not cost competitive." The review states that Irvin's role as a broker could not be eliminated, however, because it would jeopardize Riverwood's "most profitable Coke business . . . at a time when our leases [are] due to expire . . . in 1999." Irvin argues that by executing the Agreement, Riverwood allowed Irvin to continue to procure equipment leases although it had no intention of permitting Irvin to reap the benefits of the leases. If Irvin is contending that Riverwood had no present intention of paying continuing commissions for the duration of the equipment leases following termination of the Agreement, this is not actionable fraud. It "reflects, at most, hard-nosed business tactics or perhaps a divergent interpretation of the [A]greement, not fraud. [Riverwood] was under no duty to disclose its own interpretation of its contractual obligations."[16]

3. Irvin's remaining enumerations of error concern remedies it seeks as a result of Riverwood's alleged breach of contract and fraud. As we find that Riverwood is entitled to judgment as a matter of law on Irvin's contract and fraud claims, we need not address Irvin's arguments regarding remedies.[17]

*Judgment affirmed. Johnson, P. J., and Ellington, J., concur.*

DECIDED AUGUST 7, 2009.

*Wilson & Epstein, Warner R. Wilson, Jr.,* for appellant.

---

[14] The only terms that survived the Agreement were indemnity and confidentiality clauses.

[15] (Punctuation and footnote omitted.) *First Data POS v. Willis,* 273 Ga. 792, 794-795 (2) (546 SE2d 781) (2001).

[16] (Citation omitted.) *Equifax,* supra at 196.

[17] See *Franklin Credit Mgmt. Corp. v. Friedenberg,* 275 Ga. App. 236, 242 (2) (d) (620 SE2d 463) (2005) (punitive damages and attorney fees flowing from a specific tort are not independent causes of action); *Kirkland v. Pioneer Machinery,* 243 Ga. App. 694, 696 (534 SE2d 435) (2000) (equitable estoppel is not an independent cause of action under Georgia law).

*Kilpatrick Stockton, George L. Murphy, Jr., Corin M. McCarthy,* for appellees.